UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

MICHAEL SEKLECKI, *on behalf of himself and*
*his minor child M.S.,*

    Plaintiff,

v.

CENTERS FOR DISEASE
CONTROL & PREVENTION *et al.,*

    Defendants.

Case No. 1:22-cv-10155-PBS

District Judge Patti Saris

F I L E D
Clerk's Office
USDC, Mass.
Date 2/3/2022
By
Deputy Clerk

## PLAINTIFF'S TIME-SENSITIVE MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS CDC & HHS

COMES NOW plaintiff, *pro se*, and moves for an order preliminarily enjoining Defendants Centers for

Disease Control & Prevention ("CDC") and Department of Health & Human Services ("HHS") – collectively

"the Federal Defendants" – from enforcing the Federal Transportation Mask Mandate ("FTMM") world-

wide.[1] Proposed Order #1. This motion requires time-sensitive relief by **FRIDAY, FEB. 18, 2022**, because

my son and I are scheduled to fly from Florida to Boston on Feb. 21 or 22 for my son's Feb. 23 appointment

at Massachusetts General Hospital and Feb. 24 appointment at Boston Children's Hospital.

### I. STATEMENT OF FACTS

The facts of this case are laid out in the Complaint. Doc. 1. I draw the Court's attention to these key

facts: 1) My son and I can't tolerate wearing a face mask: *Id*. at ¶¶ 1-9; 2) We must fly often for my son's

medical treatment: *Id*. at ¶¶ 9-13; 3) Our inability to obtain mask exemptions from multiple airlines and

being restricted from flying because of the FTMM: *Id*. at ¶¶ 14-46; 4) Our future travel plans: *Id*. at ¶¶ 47-

---

[1] In the alternative, should the Court determine a worldwide injunction against enforcement of the FTMM is not
warranted, I present two additional options. Proposed Orders #2 & 3.

50; 5) Our inability to use surface public transportation: *Id*. at ¶¶ 59-61; 6) Details about the FTMM: *Id*. at ¶¶ 66-86; and 7) Congress has never enacted a mask mandate: *Id*. at ¶¶ 87-90.

## II. LEGAL STANDARD

The Court weighs four factors when considering whether to grant a PI. The necessary level or degree of possibility of success on the merits will vary according to the Court's assessment of the other factors. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). A plaintiff does not have to show that all factors favor it. A court will "balanc[e] the equities involved." *Asbestos Info. Assoc./North Am. v. OSHA*, 727 F.2d 415, 418 (5th Cir. 1984). "The first two factors of the … standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). When the government is the defendant, the third and fourth factors merge.

As shown below, all four factors weigh strongly in my favor. When combined with my high probability of winning on the merits, review of the other three factors reveals the equities weigh heavily in favor of granting a preliminary injunction.

## III. ARGUMENT

**A. There is a substantial likelihood I will ultimately prevail on the merits of my claims against Defendants CDC and HHS.**

**1. The FTMM exceeds the Federal Defendants' statutory authority under the Public Health Service Act.**

The Biden Administration has issued numerous mandates related to the COVID-19 pandemic attempting to coerce Americans to wear masks, get vaccinated, and/or endure regular virus testing. It also renewed a provision Congress enacted for a short period of time, but declined to extend, prohibiting landlords from evicting tenants who couldn't pay their rent. CDC also shut down the entire cruise industry and then issued a Conditional Sailing Order ("CSO") imposing so many onerous restrictions that many cruiselines were unable to resume operations.

Every significant Executive Branch pandemic mandate has been blocked in the courts except for two:[2] The FTMM as well as HHS' requirement that all healthcare workers at facilities accepting Medicare and Medicaid get inoculated.[3] The judiciary has halted these executive directives: 1) CDC's nationwide Eviction Moratorium ("EM"); 2) CDC's CSO restricting cruiseship operations; 3) CDC's order immediately expelling migrants due to COVID-19; 4) the president's executive order requiring that all federal contractors get vaccinated; 5) HHS' mask-and-vaccine mandate for Head Start programs; 6) the Navy's vaccine requirement; and 7) the president's executive order requiring all federal employees to get vaccinated. Notably the FTMM is the administration's only mask mandate that a court has not yet enjoined or stayed. The Court should take care of that anomaly now.

Just three weeks ago, the Supreme Court made it clear (again) that Executive Branch agencies may not dictate COVID-19 mandates without clear authorization from Congress.

> "The only exception is for workers who … wear a mask each workday. OSHA has never before imposed such a mandate. Nor has Congress. Indeed, although Congress has enacted significant legislation addressing the COVID–19 pandemic, it has declined to enact any measure similar to what OSHA has promulgated here. … Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided. … The question, then, is whether the Act plainly authorizes the Secretary's mandate. It does not. … It is not our role to weigh such tradeoffs. In our system of government, that is the responsibility of those chosen by the people through democratic processes." *Nat'l Federation of Independent Business v. Dept. of Labor*, No. 21A244 (U.S. Jan. 13, 2022) (per curiam).

"Congress has chosen not to afford OSHA – or any federal agency – the authority to issue a vaccine mandate. … The Court rightly applies the major questions doctrine and concludes that this lone statutory subsection does not clearly authorize OSHA's mandate." *Id.* (Gorsuch, Thomas, & Alito, JJ., concurring).

---

[2] Challenges to CDC's International Traveler Testing Requirement have yet to be decided by the Middle District of Florida and the Eastern District of Virginia.

[3] Lower courts enjoined the healthcare worker vaccine mandate, but the Supreme Court lifted the injunctions 5-4, narrowly holding that the statute authorized vaccines as part of patient-safety requirements. *Biden v. Missouri*, No. 21A240 (U.S. Jan. 13, 2022).

Public Health Service Act ("PHSA") § 361 contains no authority to adopt a worldwide[4] mask mandate

for the transportation sector. As part of its response to the COVID-19 pandemic, the Federal Defendants

issued the nationwide EM relying on § 361. Likewise, as authority for the FTMM, the Federal Defendants

invoked that statute and CDC regulations implementing it (42 CFR §§ 70.2, 71.31(b), and 71.32(b)).

> The HHS secretary "is authorized to make and enforce such *regulations* as in his judgment
> are necessary to prevent the introduction, transmission, or spread of communicable dis-
> eases from foreign countries into the States or possessions, or from one State or posses-
> sion into any other State or possession. For purposes of carrying out and enforcing such
> regulations, the [secretary] may provide for such inspection, fumigation, disinfection, san-
> itation, pest extermination, destruction of animals or articles found to be so infected or
> contaminated as to be sources of dangerous infection to human beings, and other
> measures, as in his judgment may be necessary." 42 USC § 264(a) (emphasis added).

This law authorizes the HHS secretary only to "make and enforce such *regulations*..." (emphasis

added). The FTMM is an *order*, not a *regulation*. Orders are not promulgated by Administrative Procedure

Act ("APA")-required procedures (proposed rulemaking, notice and comment, then final rulemaking). Im-

portantly the title of this statute is "*Regulations* to control communicable diseases." (emphasis added).

Numerous federal courts struck down the EM, decisions the Supreme Court sustained, holding that

Congress never gave CDC the staggering amount of power it claims to supposedly reduce the transmission

of COVID-19. The Federal Defendants did not prevail on the merits in any case challenging the EM.[5]

> "It would be one thing if Congress had specifically authorized the action that the CDC has
> taken. But that has not happened. Instead, the CDC has imposed a nationwide morato-
> rium on evictions in reliance on a decades-old statute that authorizes it to implement
> measures like fumigation and pest extermination. It strains credulity to believe that this
> statute grants the CDC the sweeping authority that it asserts. ... the sheer scope of the
> CDC's claimed authority under § [264](a) would counsel against the Government's inter-
> pretation. We expect Congress to speak clearly when authorizing an agency to exercise
> powers of 'vast 'economic and political significance.'' ... That is exactly the kind of power

---

[4] The FTMM applies aboard flights to and from the United States, even when the aircraft is outside U.S. airspace. It likewise applies to ships calling on U.S. ports even when such vessels are in the open sea thousands of miles from American shores, far outside U.S. jurisdiction.

[5] *Tiger Lily v. HUD*, No. 2:20-cv-2692, 2021 WL 1171887 (W.D. Tenn. March 15, 2021); *Tiger Lily v. HUD*, 992 F.3d 518, 520 (6th Cir. 2021); *Alabama Ass'n of Realtors v. HHS*, No. 20-cv-3377 (D.D.C. May 5, 2021); *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021); and *Terkel v. CDC*, No. 6:20-cv-564, 2021 WL 742877 (E.D. Tex. Feb. 25, 2021).

that the CDC claims here. ... the Government's read of § [264](a) would give the CDC a breathtaking amount of authority. It is hard to see what measures this interpretation would place outside the CDC's reach..." *Alabama Ass'n of Realtors v. HHS,* No. 21A23 (U.S. Aug. 26, 2021).

"Though the [PHSA] grants the Secretary broad authority to make and enforce regulations necessary to prevent the spread of disease, his authority is not limitless. ... These 'other measures' must therefore be similar in nature to those listed in § 264(a). ... And consequently, like the enumerated measures, these 'other measures' are limited in two significant respects: first, they must be directed toward 'animals or articles,' 42 U.S.C. § 264(a), and second, those 'animals or articles' must be 'found to be so infected or contaminated as to be sources of dangerous infection to human beings,' ... In other words, any regulations enacted pursuant to § 264(a) must be directed toward specific targets 'found' to be sources of infection.' *Alabama Ass'n of Realtors v. HHS*, No. 20-cv-3377 (D.D.C. May 5, 2021).

A district court enjoined CDC's CSO restricting cruiseship operations, another order (not a regulation) supposedly based on the PHSA. "[I]f CDC promulgates regulations the director finds 'necessary to prevent' the interstate or international transmission of a disease, the enforcement measures must resemble or remain akin to 'inspection, fumigation, disinfection, sanitation, pest extermination, destruction of infected animals or articles.'" *Florida v. Becerra,* No. 8:21-cv-839 (M.D. Fla. June 18, 2021); CDC's motion to stay PI denied, No. 21-12243 (11th Cir. July 23, 2021).

The district court declared CDC's interpretation of § 264(a) dead wrong, using strong language to condemn the agency for acting unlawfully:

"[N]ever has CDC implemented measures as extensive, disabling, and exclusive as those under review in this action. However, in this action CDC claims a startlingly magnified power. ... CDC's assertion of a formidable and unprecedented authority warrants a healthy dose of skepticism. ... Both text and history confirm that the conditional sailing order exceeds the authority granted to CDC by Section 264(a). And if Section 264 fails to confer the statutory authority for the conditional sailing order, the regulations implementing Section 264 can grant no additional authority." *Id.*

Maskwearing does not comport to the statute's allowance for CDC to require the "sanitation ... of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 USC § 264(a). Wearing a mask does not reduce the transmission of viral particles and the statute directs that any "sanitation" be directed at "animals or articles," not human faces. The use of

5

the exact words "human beings" in the same sentence of § 264(a) conclusively shows Congress did not

conceive the word "animals" as including humans. Plus "sanitation" measures may be directed solely to

things "found to be so infected or contaminated..." not at every single person (the vast majority of whom

do not have coronavirus). *Florida*.

To sustain the government's interpretation, the Court would have to first find that an "order" is "reg-

ulation," then agree with Defendant HHS secretary's determination that the FTMM is "necessary." 42 USC

§ 264(a). But the scientific evidence shows otherwise: Masks do nothing to prevent coronavirus spread

but harm human health. Doc. 1 at ¶¶ 124-189 & https://bit.ly/masksarebad. "[O]rdering masks to stop

Covid-19 is like putting up chain-link fencing to keep out mosquitos." *Ridgeway Properties v. Beshear*, No.

20-CI-678 (Ky. Cir. June 8, 2021).

The Sixth Circuit spoke decisively regarding CDC's erroneous interpretation of its powers:

> "[§ 264(a)] does not grant the CDC the power it claims. ... [T]he first sentence grants the
> Secretary rulemaking authority. But that authority is not as capacious as the government
> contends. When we interpret statutes, we must give effect to each clause and word. ...
> Plainly, the second sentence narrows the scope of the first. ... There is no clear expression
> of congressional intent in § 264 to convey such an expansive grant of agency power, and
> we will not infer one. ... [CDC's] interpretation is both textually implausible and constitu-
> tionally dubious." *Tiger Lily v. HUD*, 992 F.3d 518, 520 (6th Cir. 2021).

Unlike the EM, which Congress did authorize for two short periods of time, Congress has never en-

acted a mandate that travelers wear masks. The Federal Defendants may not exercise their authority in a

manner that is inconsistent with the administrative structure that Congress has created.

"CDC claims authority to impose nationwide any measure, unrestrained by the second sentence of

Section 264(a), to reduce to 'zero' the risk of transmission of a disease – all based only on the director's

discretionary finding of 'necessity.' That is a breathtaking, unprecedented, and acutely and singularly au-

thoritarian claim." *Florida*.

The regulations the Federal Defendants cite to authorize the FTMM do no such thing. Like the statute,

they only allows sanitation "of animals or articles," not measures such as forced masking of human beings.

"This kind of catchall provision at the end of a list of specific items warrants application of the *ejusdem generis* canon, which says that 'where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.' *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) (citation omitted). The residual phrase in § 264(a) is 'controlled and defined by reference to the enumerated categories … before it,' *Id.* at 115, such that the 'other measures' envisioned in the statute are measures like 'inspection, fumigation, disinfection, sanitation, pest extermination' and so on, 42 U.S.C. § 264(a)." *Tiger Lily*.

"Congress directed the actions set forth in Section 361 to certain *animals or articles*, those so infected as to be a dangerous source of infection to people. On the face of the statute, the agency must direct other measures to specific targets 'found' to be sources of infection – not to amorphous disease spread but, for example, to *actually infected animals* ..." *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021) (emphasis added).

Numerous federal courts have enjoined several agencies' COVID-19 orders because they are totalitarian dictates, not laws passed by the people's elected representatives in Congress.

"The lack of express terms within the statute is significant: even 'broad rulemaking power must be exercised within the bounds set by Congress,' *Merck & Co. v. HHS*, 385 F. Supp. 3d 81, 92, 94 (D.D.C. 2019), aff'd 962 F.3d 531 (D.C. Cir. 2020) (stating that 'agencies are 'bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes'); and the CDC 'does not [have the] power to revise clear statutory terms,' *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 327 (2014)." *Huisha-Huisha v. Mayorkas*, No. 21-100 (D.D.C. Sept. 16, 2021) (enjoining CDC's migrant expulsion order).

"Furthermore, even for a good cause, including a cause that is intended to slow the spread of Covid-19, Defendants cannot go beyond the authority authorized by Congress. … (holding that Congress must provide clear authorization if delegating the exercise of powers of 'vast economic and political significance,' if the authority would 'significantly alter the balance between federal and state power,' or if the 'administrative interpretation of a statute invokes the outer limits of Congress' power'). Accordingly, the Court finds that the president exceeded his authority under the FPASA." *Kentucky v. Biden*, No. 3:21-cv-55 (E.D. Ky. Nov. 30, 2021) (enjoining vaccine mandate for federal contractors). *See also Georgia v. Biden*, No. 1:21-cv-163 (S.D. Ga. Dec. 7, 2021) (same).

"A federal agency cannot act absent Congressional authorization. It cannot confer power upon itself. To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to grant to the agency power to override Congress. … Congress could have spoken directly to the issue of vaccination, masking, or other precautions in the last year when passing other COVID-19-related legislation, but it did not

and has not. … The plain language of defendants' cited authority, the statutory context, and the existing regulations all confirm that the Secretary's interpretation … is not a permissible construction of the statute. … the identified sources of authority cannot fairly be construed so broadly as to include an unprecedented, nationwide requirement of a medical procedure or universal masking." *Texas v. Becerra*, No. 5:21-cv-300 (N.D. Tex. Dec. 31, 2021) (enjoining HHS' mask-and-vaccine mandate for Head Start). *See also Louisiana v. Becerra*, No. 3:21-cv-4370 (W.D. La. Jan. 1, 2022) (same).

"The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

The Federal Defendants are not entitled to *Chevron* deference. Where the statute is unambiguous, then "that is the end of the matter"; a court applies it as written. There is no ambiguity in the PHSA. Forced masking is not authorized, period.

Finally, if the Court finds the PHSA does authorize the FTMM, it should hold that § 361 is an unconstitutional delegation of legislative power. Doc. 1 at ¶¶ 516-523. *See Mistretta v. United States*, 488 U.S. 361, 371-72 (1989); *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019); *BST Holdings v. OSHA*, No. 21-60845 (5th Cir. Nov. 12, 2021).

"The court declares that the challenged [EM] … exceeds the power granted to the federal government to 'regulate Commerce … among the several States' and to 'To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers.' U.S. Const. Art. 1, § 8. That [CDC eviction] order is held and declared unlawful as 'contrary to constitutional … power.' 5 U.S.C. § 706(2)(B)." *Terkel v. CDC*, No. 6:20-cv-564 (E.D. Tex. Feb. 25, 2021).

"This practically unbounded interpretation causes separation-of-powers problems, discussed in greater depth below, and naturally stirs suspicion about the constitutionality of Section 264(a). … Forbidding that sort of delegation seems the least that is required by, and the least that is unmistakably implicit in, the Constitution's bestowing the entire legislative power on the legislative branch. … Unaccountable administrative law, unbounded by ascertainable directives from the legislative branch, is not the product of an ascendant and robust constitutional republic." *Florida*.

**2. The Federal Defendants failed to observe the notice-and-comment procedure required by law before ordering the FTMM.**

The FTMM was issued without following APA procedures including notice and comment. "Legislative rules have the 'force and effect of law' and may be promulgated only after public notice and comment. *INS v. Chadha*, 462 U.S. 919, 986..." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014). The Federal Defendants incorrectly argue the FTMM is not subject to APA's notice-and-comment requirements and that there was good cause to proceed without the required process because COVID-19 presents urgent circumstances. But violation of the FTMM carries severe legal consequences including fines starting at $500 and refusal to board flights, buses, trains, etc. The mandate is not an interpretive rule or policy statement that can evade public comment.

As a district court explained last June, COVID-19 began in December 2019 and was declared a global pandemic in March 2020. The Federal Defendants had almost 11 months to put the FTMM through APA's required notice-and-comment procedures, but failed to do so.

> The CSO "carries identifiable legal consequences, such as the prospect of criminal penalties, substantial fines, and suspension of sailing. ... [CSO] carries the force of law and bears all of the qualities of a legislative rule. Accordingly, the [CSO]'s prospective, generalized application invites the conclusion that the order is a 'rule.' In plain words, if it reads like a rule, is filed like a rule, is treated like a rule, and imposes the consequences of a rule, it's probably a rule. Because the [CSO] is a rule, CDC was obligated to follow the procedures applying to the promulgation of a rule..." *Florida*.

The government can't claim the "good cause" exemption found in 5 USC § 553(b)(3)(B) because it can't self-create an "emergency" 10½ months into a declared pandemic. COVID-19 is again surging despite the FTMM – proving this policy has failed and was never in the public interest. The government's beg for a "good cause" exception would be more plausible if the policy actually worked. But the evidence is clear: it doesn't.

Had the Federal Defendants put the FTMM through the required APA notice-and-comment period, I would have submitted the concerns listed in ¶ 506 of the Complaint. Doc. 1. "[B]ald assertions that the

agency does not believe comments would be useful cannot create good cause to forgo notice-and-comment procedures." *Action on Smoking & Health v. Civil Aeronautics Bd.,* 713 F.2d 795, 800 (D.C. Cir. 1983); *see also Nat. Res. Def. Council v. Evans*, 316 F.3d 904, 906 (9th Cir. 2003).

> "Violation of the [CSO] triggers a serious consequence... The [CSO] is a rule ... The APA therefore obligates CDC to ... provide notice and comment. ... To satisfy its notice-and-comment obligations under the APA, 'an agency must consider and respond to significant comments received during the period for public comment.' *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). Therefore, the [CSO] violates the APA..." CDC lacked 'good cause' to evade the statutory duty of notice and comment." *Florida*.

"There is a substantial likelihood that the Rule must be set aside for another reason: HHS did not have 'good cause' to skip the notice-and-comment procedures required by the APA..." *Texas*. "The situation was not so urgent that notice and comment were not required. ... Notice and comment would have allowed others to comment upon the need for such drastic action before implementing it." *Louisiana*.

### 3. The FTMM is arbitrary, capricious, and an abuse of discretion.

CDC's mandate forcing my son and me to wear a mask (even though our medical conditions prohibit it) as a condition of using any form of public transportation is the perfect example of arbitrary and capricious executive policies that the law demands be stopped. 5 USC § 706(2)(A). I incorporate by reference my allegations in ¶¶ 91-97, 104-236, & 299-302 of the Complaint. Doc. 1.

The Federal Defendants' actions in promulgating the FTMM are not rational, reasonably considered, or reasonably explained. Although courts give a large degree of deference to an agency when it is evaluating scientific data, a court may not ignore contrary evidence such as 227 scientific studies, medical articles, and videos demonstrating that masks are ineffective and harmful. https://bit.ly/masksarebad. The FTMM "therefore is patently not a regulation 'narrowly drawn to prevent the supposed evil,' *cf. Cantwell v. Connecticut*, 310 U.S. 307." *Aptheker v. Secretary of State,* 378 U.S. 500 (1964).

An agency decision is arbitrary and capricious if it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency,

or is so implausible that it could not be ascribed to a difference in view…" *Motor Vehicle Manufacturers Ass'n v. State Farm Auto Mutual Ins. Co.*, 463 U.S. 29, 43 (1983). All three factors are in play here with the FTMM. CDC's determination that transportation poses a greater risk than numerous other activities is arbitrary and capricious. Notably there's no evidence that airplane cabins pose a special risk of respiratory virus transmission. Doc. 1 at ¶¶ 104-123.

The FTMM is about politics, not public health. President Biden made a national mask mandate a top campaign pledge in 2020. Despite admitting he knew it was unconstitutional, Biden acted in bad faith by signing the FTMM executive order Jan. 21, 2021, (his second day in office) anyway. An agency policy created due to politics and not reasoned science is arbitrary and capricious. *Midwater Trawlers Coop. v. Dep't of Commerce*, 282 F.3d 710, 720 (9th Cir. 2002).

### 4. The FTMM violates the 10th Amendment.

The mask mandate applies to noncommercial intrastate transportation and commandeers state employees to enforce a federal order. There are presently 43 states that don't require maskwearing, including Massachusetts. Doc. 1 at Ex. 159. CDC and HHS have no power to override the sovereign decisions of state governments regarding public health and intrastate transport.

The Supreme Court last month found OSHA's mask-or-vaccine policy unconstitutional because states possess the general police power to regulate public health. Likewise, the FTMM unconstitutionally preempts the laws of the 43 states that don't require face coverings.

> "This Court is not a public health authority. But it is charged with resolving disputes about which authorities possess the power to make the laws that govern us under the Constitution and the laws of the land. … There is no question that state and local authorities possess considerable power to regulate public health. They enjoy the 'general power of governing,' including all sovereign powers envisioned by the Constitution and not specifically vested in the federal government. … The federal government's powers, however, are not general but limited and divided. … Historically, such matters have been regulated at the state level by authorities who enjoy broader and more general governmental powers." *NFIB* (Gorsuch, Thomas, & Alito, JJ., concurring).

In the Eviction Moratorium case, the Sixth Circuit also spoke forcefully about the 10th Amendment's

11

restrictions on CDC and HHS mandates:

> "Our reading of the statute's text accords with the principle that Congress does not casually authorize administrative agencies to interpret a statute to push the limit of congressional authority. That principle has yet greater force when the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power" such as public health and intrastate transportation. "Agencies cannot discover in a broadly worded statute authority to supersede state ... law. Instead, Congress must 'enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power and the power of the Government over private property'" such as rideshare cars and privately owned buses, trains, ferries, airplanes, etc. *Tiger Lily*.

When an "administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power," there must be "a clear indication that Congress intended that result." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172-73 (2001). "[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. at 230." *Hillsborough County v. Automated Medical Labs*, 471 U.S. 707, 720 (1985).

CDC and HHS can't overrule mask laws such as those in at least 13 states including my home state of Florida that ***prohibit*** public entities from requiring face coverings. The Federal Defendants unconstitutionally commandeer state officials such as the heads of airport and transit authorities (as well as their subordinates) to require face coverings on state-owned transportation conveyances and in state-operated transport hubs. Hundreds of thousands of state workers have been commandeered to enforce a federal mask mandate that goes against the law in 43 states.

> "[E]ven if the law could be interpreted as ... the United States suggest[s], it would still violate the anticommandeering principle ... The anticommandeering doctrine may sound arcane, but it is simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the States." *Murphy v. NCAA*, 138 S. Ct. 1461 (2018).

> "It is an 'ordinary rule of statutory construction that if Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.' *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (quotation marks and citation omitted); *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–73 (2001). ... As the district court

12

noted, the broad construction of § 264 the government proposes raises not only concerns about federalism, but also concerns about the delegation of legislative power to the executive branch. ... We will not make such an unreasonable assumption." *Tiger Lily*.

"If the federal government were to radically readjust the balance of state and national authority, those charged with the duty of legislating must be reasonably explicit about it. The Supreme Court is unlikely to assume Congress has meant to effect a significant change into the sensitive state and federal relations. Congress does not normally intrude upon the police power of States." *Louisiana*.

**5. The FTMM violates the Fifth Amendment.**

I have attempted to obtain medical exemptions from the FTMM from multiple airlines, but all have denied me. Some have also refused my son's medical waiver. Doc. 1 at ¶¶ 14-46. The due-process problem is that the Federal Defendants delegate enforcement of the FTMM to private companies with no opportunity to appeal to a neutral federal decisionmaker. *Id.* at ¶¶ 66-86. The purported disability exemption in the FTMM is in reality a farce. It is futile to demand exemptions from the airlines.

If the Federal Defendants mandate masks and claim to allow disability exceptions, they constitutionally must provide due process in the form of a rapid pre-deprivation hearing to determine whether an airline wrongly applied the FTMM in denying a disabled person transportation.

As the Supreme Court has held many times in the past two years, the Constitution can't be suspended because we are in a global pandemic.

"[C]ourts nearly always face an individual's claim of a constitutional right pitted against the government's claim of special expertise in a matter of high importance involving public health or safety. It has never been enough for the State to insist on deference or demand that individual rights give way to collective interests. Of course we are not scientists, but neither may we abandon the field when government officials with experts in tow seek to infringe a constitutionally protected liberty." *South Bay United Pentecostal Church v. Newson*, No. 20A136 (20-746) (U.S. Feb. 5, 2021) (Gorsuch, Thomas, and Alito, JJ., concurring).

**6. The FTMM violates the constitutional right to freedom of travel for Americans such as my son and myself who medically can't wear a face mask.**

The FTMM is unreasonable as it imposes a difficult or impossible burden on millions of travelers with

disabilities such as my son and myself – having to wear a face covering that is medically dangerous and

intolerable – for no public benefit since masks don't reduce the spread of respiratory viruses and harm

human health. https://bit.ly/masksarebad. I must fly with my son once or twice a month to Massachusetts

because my son requires specialized medical care not available near our home. Being forced to drive

would be a trip of more than 1,250 miles and take an estimated 20 hours each way, not counting stops to

eat and drink, get gas, use the bathroom, and sleep. Such a long car trip would be torture for my son.

The right to travel is one of the implied and unenumerated rights reserved under the Constitution to

the people. There is no reasonable mode of transport available to us to get to my son's medical appoint-

ments in Boston other than airplane.

> "To make one choose between flying to one's destination and exercising one's constitu-
> tional right appears to us, as to the Eighth Circuit, *United States v. Kroll*, 481 F.2d 884, 886
> (8th Cir. 1973), in many situations a form of coercion, however subtle. *Cf. Lefkowitz v.
> Turley*, 414 U.S. 70, 79-82 ... (1973). While it may be argued there are often other forms
> of transportation available, it would work a considerable hardship on many air travelers
> to be forced to utilize an alternate form of transportation, assuming one exists at all."
> *United States v. Albarado*, 495 F.2d 799 (2nd Cir. 1974).

The Eighth Circuit held in *Kroll* that "flying may be the only practical means of transportation;" when

limited, it deprives an individual of the right to travel.

> "The impact on a citizen who cannot use a commercial aircraft is profound. He is restricted
> in his practical ability to travel substantial distances within a short period of time, and the
> inability to fly to a significant extent defines the geographical area in which he may live
> his life. ... An inability to travel by air also restricts one's ability to associate more gener-
> ally, and effectively limits educational, employment, and professional opportunities." *Mo-
> hamed v. Holder*, 2014 WL 243115, at *6 (E.D.Va. Jan. 22, 2014).

The FTMM forces me to wear a mask while flying despite the detriment to my health. Doc. 1 at ¶¶ 1-

8. But Congress affirmed the constitutional right to fly for disabled Americans by enshrining it into statute:

> "A citizen of the United States has a public *right* of transit through the navigable airspace.
> To further that right, the Secretary of Transportation shall consult with the Architectural
> and Transportation Barriers Compliance Board ... before prescribing a regulation or issu-
> ing an order or procedure that will have a significant impact on the accessibility of com-
> mercial airports or commercial air transportation for handicapped individuals." 49 USC §
> 40103 (emphasis added).

"The constitutional right to travel from one State to another, and necessarily to use the highways *and other instrumentalities of interstate commerce* in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *United States v. Guest*, 383 U.S. 745, 757 (1966) (emphasis added).

The Supreme Court consistently applies strict scrutiny to restrictions on the right to interstate travel. It has long "recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969). "Strict scrutiny is a searching examination, and it is the government that bears the burden" of proof. *Fisher v. University of Texas*, 570 U.S. 297, 310 (2013).

Our right to freedom of movement can't be restricted when there is no evidence that airplanes or other modes of transit have contributed to the spread of COVID-19. And there are less restrictive rules that could be adopted to minimize the risk to public health such as using CDC systems called "Do Not Board" and "Lookout" to alert airlines to bar passengers who have tested positive for a communicable disease. Targeting travelers who are a genuine threat to public health can be done without infringing on the freedom to travel for everyone else. Doc. 1 at ¶¶ 91-97 & 104-123.

"[T]he government has the burden to establish that the challenged law satisfies strict scrutiny. … [N]arrow tailoring requires the government to show that measures less restrictive of the [constitutionally protected] activity could not address its interest in reducing the spread of COVID." *Tandon v. Newsom*, No. 20A151 (U.S. April 9, 2021).

**7. The FTMM violates the Air Carrier Access Act.**

The FTMM blatantly discriminates against Americans with medical conditions who can't wear masks in violation of the ACAA. 49 USC § 41705(a). CDC and HHS may not issue an order that is contrary to

15

statute. The Federal Defendants are disingenuous when claiming that a medical exemption is already pro-

vided. As explained in detail in the Complaint (Doc. 1 at ¶¶ 316-320 & 444-494), the mask mandate allows

airlines to violate the ACAA by requiring numerous hurdles for a disabled person to jump through that

aren't allowed under DOT regs (14 CFR Part 382), making it pretty much impossible for anyone with a

medical condition who can't tolerate wearing a mask to get such an exemption. I've applied for exemp-

tions many times and been denied. My son has been granted waivers some of the time, but not others.

> "The Navy provides a religious accommodation process, but by all accounts, it is theater.
> … It merely rubber stamps each denial. … Religious exemptions to the vaccine require-
> ment are virtually non-existent. … the record indicates the denial of each request is pre-
> determined. As a result, Plaintiffs need not wait for the Navy to engage in an empty for-
> mality. … The Court finds that exhaustion is futile and will not provide complete relief… In
> essence, the Plaintiffs' requests are denied the moment they begin. … Thus, the available
> administrative remedies are inadequate. … The record overwhelmingly demonstrates
> that the Navy's religious accommodation process is an exercise in futility." *U.S. Navy
> SEALs 1-26 v. Biden*, No. 4:21-cv-1236 (N.D. Tex. Jan. 3, 2022).

Just like the Navy's automatic denial of requests for vaccine exemptions, CDC's FTMM allows airlines

and other transportation providers to rubber-stamp every demand for a mask waiver "DENIED," as has

occurred to me on numerous occasions. Unlike with the Navy's vaccine mandate, the FTMM doesn't even

provide the disabled any process for seeking a medical waiver from the government agency. CDC instead

gives private companies the power to "consider" mask exemptions, virtually all of which are refused, mak-

ing it a futile gesture to seek a nonexistent exemption.

Regulations the FTMM violate include 14 CFR §§ 382.11(a)(1), 382.17, 382.19(a), 382.19(c)(1), 382.21,

382.23(a), 382.23(c)(1), 382.23(d), 382.25, and 382.87(a). Congress enacted the ACAA to protect passen-

gers such as my son and myself who suffer from medical impairments. The Federal Defendants have a

legal responsibility not to issue orders that violate statutes and duly promulgated regulations, but have

done so here with the FTMM. When courts review the legal interpretations of an agency such as CDC

regarding its compliance with statutes it does not administer, "such review can be more stringent: Courts

16

sometimes review such matters *de novo*, or without any deference at all to the agency's interpretation."
*Freeman v. DirecTV*, 457 F.3d 1001, 1004 (9th Cir. 2006).

**B. Being forced to continue masking while flying constitutes irreparable harm because it will lead to further damage to my health and the disruption of not being able to get my son to critical medical appointments.**

My son and I are suffering irreparable harm of being restricted from using the nation's entire public-transportation system due to the FTMM because we medically can't wear a face mask. The government's violation of our rights will continue to cause irreparable harm absent a PI. The Federal Defendants have already caused us several injuries by causing us to be denied boarding by Frontier Airlines, harassed and demeaned by Spirit Airlines, and denied the ability to fly by American Airlines and Southwest Airlines. Doc. 1 at ¶¶ 14-46 & 51-58. We've also been denied the ability to use mass transit such as buses and trains. *Id.* at ¶¶ 59-61.

Put simply, a "violation of a constitutional right constitutes irreparable injury ..." *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013). And as a district judge already held in another CDC case, failure "to provide notice and comment ... establishes irreparable injury. ... the harm flowing from a procedural violation can be irreparable." *Florida*. Abridged liberty can't be compensated with cash, especially since the APA doesn't allow for monetary damages. "For injury to be irreparable, plaintiffs need only show it cannot be undone through monetary remedies. Being deprived of a procedural right ... (by violation of the ADA's notice and comment requirements) is irreparable injury. ... The public interest is served by maintaining the constitutional structure and maintaining the liberty of individuals..." *Louisiana*.

The Supreme Court has spoken forcefully on the issue of pandemic restrictions that violate constitutional rights. An American is "irreparably harmed by the loss of [constitutionally protected] rights 'for even minimal periods of time'; the State has not shown that 'public health would be imperiled' by employing less restrictive measures." *Tandon*.

"It is clear that a denial of the petitioners' proposed stay would do them irreparable harm. For one, the Mandate threatens to substantially burden the liberty interests ... For the individual petitioners, the loss of constitutional freedoms 'for even minimal periods of time ... unquestionably constitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 (1976)." *BST Holdings*.

## C. The equities weigh strongly in favor of a preliminary injunction.

The injuries we're suffering because of the FTMM outweigh the harm the requested interim relief would inflict on the Federal Defendants. Whereas my son and I have been deprived of our constitutional and statutory rights to due process, freedom to travel, and to be free of disability discrimination, *inter alia*, the government would suffer no harm if the Court grants a PI. A "stay will do OSHA no harm whatsoever. Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) [mask-or-vaccine mandate] is illegitimate. Moreover, any abstract 'harm' a stay might cause the Agency pales in comparison and importance to the harms the absence of a stay threatens to cause countless individuals..." *BST Holdings*.

The government's own experience with the FTMM shows the policy doesn't stop infections. TSA admits that more than 12,000 of its employees – all of whom must wear masks – have tested positive for COVID-19. Doc. 1 at Ex. 81. The Federal Defendants cannot have an interest in taking actions that are outside of their statutory and/or constitutional authority. They therefore cannot claim to have any cognizable "injury" as a result of the issuance of a PI.

"The government has not shown that an injunction in this case will have any serious detrimental effect on its fight to stop COVID-19. ... Stopping the spread of COVID-19 will not be achieved by overbroad policies like the federal-worker mandate. .... All in all, this court has determined that the balance of the equities tips in the plaintiffs' favor, and that enjoining the federal-worker mandate is in the public interest." *Feds for Medical Freedom v. Biden*, No. 3:21-cv-356 (S.D. Tex. Jan. 21, 2022) (enjoining the president's vaccine mandate for federal employees).

The government would actually be enriched by a worldwide injunction against the FTMM as travel to, from, and within the United States would skyrocket as millions of people who haven't flown because of

the mask mandate would release their pent-up wanderlust, generating significant direct federal tax reve-

nue and economic stimulus, especially for the hard-hit travel industry.

**D. The public interest requires enjoining the FTMM.**

A PI is warranted because "it is always in the public interest to prevent the violation of a party's con-

stitutional rights." *Am. Bev. Ass'n v. City and Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (*en banc*). "[I]t

is too late for the State to defend extreme measures with claims of temporary exigency, if it ever could."

*South Bay* (Gorsuch, J.). It's in the public interest to enforce congressional intent. There is no law (or reg-

ulation) requiring anyone wear a mask. The Court must apply the *actual* laws passed by Congress and

regulations duly promulgated by DOT that prohibit discrimination against disabled travelers, not to men-

tion the Constitution.

There is "no public interest in the perpetuation of unlawful agency action." *Shawnee Tribe v. Mnuchin*,

984 F.3d 94, 102 (D.C. Cir. 2021). A PI that "maintains the separation of powers and ensures that a major

new policy undergoes notice and comment" is also in the public interest. *Texas v. United States*, 787 F.3d

733, 768 (5th Cir. 2015). Airline executives themselves recognize the FTMM is ineffective and should be

abolished. There is no increased risk of exposure to COVID-19 by passengers not wearing face coverings,

as airline executives and the scientific community have said countless times. *Id.* and https://bit.ly/

masksarebad.

Studies have shown airplanes are among the safest places you can be during the pandemic. Doc. 1 at

¶¶ 104-123. And robust scientific research shows that masks do nothing to reduce coronavirus spread

and are actually harmful to humans. *Id.* at ¶¶ 124-189.

> "Not only is there no evidence that the applicants have contributed to the spread of
> COVID-19 but there are many other less restrictive rules that could be adopted to mini-
> mize the risk to public interests. Finally, it has not been shown that granting the applica-
> tions will harm the public. As noted, the State has not claimed that attendance at the
> applicants' services has resulted in the spread of the disease. And the State has not shown
> that public health would be imperiled if less restrictive measures were imposed." *Roman
> Catholic Diocese of Brooklyn v. Cuomo,* No. 20A87 (U.S. Nov. 25, 2020).

It's not in the public interest to restrict millions of Americans such as my son and myself who can't wear face coverings because of medical conditions from using all modes of public transportation nation-wide. Also demonstrating the public interest is that regulation of public health is historically the province of the states, 43 of which do not require people to cover their nose and mouth. Congress decides what's in the public interest, not unelected bureaucrats at CDC and HHS.

> "Neither the plain language of § 7301 nor any traditional notion of personal liberty would tolerate such a sweeping grant of power. … no arm of the federal government has ever asserted such power. … A lack of historical precedent tends to be the most telling indication that no authority exists. … The government has offered no answer – no limiting principle to the reach of the power they insist the President enjoys. For its part, this court will say only this: however extensive that power is, the federal-worker mandate exceeds it." *Feds for Medical Freedom.*

Government "actors have been moving the goalposts on pandemic-related sacrifices for months, adopting new benchmarks that always seem to put restoration of liberty just around the corner." *South Bay* (Gorsuch, J.).

### IV. PRAYER FOR RELIEF

WHEREFORE, I request this Court issue one of the three attached proposed orders granting me a PI. Equitable principles favor a worldwide PI against the FTMM since "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff..." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). A worldwide injunction would promote the public interest of equal treatment under the law for the disabled and be consistent with basic administrative law principles.[6]

> "The court is cognizant of the equitable and constitutional questions raised by the rise of nationwide injunctions. … But it does not seem that tailoring relief is practical in this case. … The court fears that limiting the relief to only those before it would prove unwieldy and would only cause more confusion. So, on the unique facts before it, the court believes the best course is to issue an injunction with nationwide applicability." *Feds for Medical Freedom.*

---

[6] It would make little sense if this Court, having found that the FTMM is likely unconstitutional and/or unlawful, merely enjoined its application only to my son and me while allowing the Federal Defendants to continue enforcing their *ultra vires* mandates around the globe, including against the millions of other disabled Americans who are being excluded from the transportation sector every day. That said, I understand some judges are leery of such wide-sweeping injunctions, so I propose two alternatives for the Court's consideration.

**L.R. 7.1(a)(2) Consultation Statement**

Because this is a new case, no defense counsel have appeared. Therefore I have no one to confer with regarding the defendants' position on this motion.

Respectfully submitted this 2nd day of February 2022.

Michael Seklecki, plaintiff on behalf of myself and my minor child M.S.
2024 Courtyard Loop #106
Sanford, FL 32771
Telephone: 321-666-4353
E-Mail: ktmlife22@icloud.com

21

**CERTIFICATE OF SERVICE**

Because this is a new case, no defense counsel have appeared. However, I hereby certify that on Feb. 2, I e-mailed courtesy copies of this motion to counsel who have represented the defendants in similar litigation:

Andrew Freidah
Counsel for the Federal Defendants
Andrew.F.Freidah@usdoj.gov

Stephen Pezzi
Counsel for the Federal Defendants
Stephen.Pezzi@usdoj.gov

Marcia Kay Sowles
Counsel for the Federal Defendants
Marcia.Sowles@usdoj.gov

Priya Aiyar
Counsel for Defendant American Airlines
Priya.Aiyar@aa.com

Roy Goldberg
Counsel for Defendant Southwest Airlines
Roy.Goldberg@stinson.com

Roberto Torricella, Jr.
Counsel for Defendant Southwest Airlines
Robert@torricellalaw.com

Maurice Baumgarten
Counsel for Defendant Southwest Airlines
Maurice@torricellalaw.com

Michael Seklecki, plaintiff on behalf of myself and my minor child M.S.