IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL SEKLECKI,            )
                             )
         Plaintiff,          )
                             )
v.                           )          Case No. 1:22-cv-10155-PBS
                             )
CENTERS FOR DISEASE          )
CONTROL & PREVENTION, *et al*., )
                             )
         Defendants.         )

**FEBRUARY 15, 2022 STATUS REPORT OF AIRLINE DEFENDANTS
REGARDING MASK EXEMPTION FOR PLAINTIFF'S MINOR SON**

As ordered by the Court during the hearing on February 11, 2022 (Doc. 36), the Airline

Defendants – American Airlines, Inc. ("American") and Southwest Airlines Co. ("Southwest") –

submit this status report regarding the efforts of Plaintiff Michael Seklecki to obtain an exemption

for his minor (4-year old) son from the aircraft mask requirements in the Federal Transportation

Mask Mandate ("FTMM"), and the Airline Defendants' procedures for granting a mask exemption

for passengers, including a four-year old child.

## GOALS

The Airline Defendants understand that the Court desires that the parties reach an

agreement that achieved these objectives, if possible:

(1) Mr. Seklecki obtains an airline ticket for his minor son, M.S., from one of the Airline

     Defendants to fly to Boston to make a medical appointment in Boston;

(2) Mr. Seklecki provides appropriate medical documentation establishing that M.S. has a

     disability and cannot wear a mask, or cannot safely wear a mask, because of the

disability (*e.g.*, does not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devices/technology); and

(3) The Airline Defendants provide Mr. Seklecki with their procedures for flying without a mask, which in some situations may include providing evidence of a negative COVID-19 test.

The Airline Defendants have done their best to achieve these goals, but unfortunately have been unable to reach agreement with Mr. Seklecki.  Mr. Seklecki has been presented with the opportunity fly to the Boston area without requiring that his son wear a mask or provide a negative COVID-19 test.  However, Plaintiff is refusing to proceed on that basis, unless the Airline Defendants agree to an array of comprehensive and baseless legal stipulations that were raised by the extensive Complaint that Plaintiff filed to initiate this litigation.

**STATUS SUMMARY**

On February 15 at 10:00 a.m., Attorney Duggan representing the Airline Defendants spoke with Mr. Seklecki in an effort to reach agreement with him on these three points.  Unfortunately, the parties could not reach agreement.  A summary of the discussion between Attorney Duggan and Mr. Seklecki is attached as **Exhibit 1**.

(1) Scheduled Flights

Following the February 11 conference, Mr. Seklecki reported that he purchased tickets for he and his son to fly from Miami to Manchester Regional Airport (NH) on an American flight

(which may be operated by PSA Airlines as "American Eagle") on February 22 returning on Southwest Airlines Flight #629 and 1231 on February 23.   At about 12:30 p.m. this afternoon, Mr. Seklecki transmitted a copy of a letter signed by Afton Rakestraw, APRN ("Advanced Practical Registered Nurse") of Child Neurology Center of Orlando.  The Airline Defendants will review this for compliance with waiver request procedures and respond as promptly as possible.[1]

The Airline Defendants provided information to Mr. Seklecki outlining several options for him to transport his son to Boston (or Manchester Regional Airport) that would comply with the Federal Transportation Mask Mandate as applied by the Airline defendants.  None was agreeable to Mr. Seklecki.

Consistent with U.S. Department of Transportation ("DOT") guidance, American Airlines requires a negative COVID-19 test for any passenger granted an exemption to travel without a mask on the aircraft.  Southwest has reviewed Mr. Seklecki's application for a mask exemption on behalf of his son and has determined that his son is eligible to travel without a mask on February 23 from Manchester to Miami (without, of course, his attached preconditions).    Mr. Seklecki has rejected both of these options.

Mr. Seklecki refuses to consider submitting the negative COVID-19 test to American in advance of his planned flight to Manchester.  He also refuses to switch his outbound flight to another airline that would not require a negative COVID-19 test for children under 5 such as Southwest or, apparently, Delta Airlines.    Instead, Plaintiff insists that both *he and his son* be granted a blanket exemption "for the remainder of 2022."  Plaintiff also insists that American and

---

[1] Southwest Airlines has reviewed the documentation provided by Mr. Seklecki and determined that his son is eligible to travel on Southwest without a mask. However, Southwest does not accept the preconditions attached to Plaintiff's Request for Exemption.

Southwest agree in writing to support all of his legal positions in this case.  **Exhibits 2 and 3** (letters attached to the emails). [2]

More problematic, Mr. Seklecki insists that the Airline Defendants waive any medical review of his or his son's requested waiver by STAT MD or any "third party medical review board," to which all other waiver requests are submitted to validate medical need and compliance with the FTMM.  The Airline Defendants cannot agree to a blanket waiver of this procedure (which is expressly authorized by the FTMM and DOT guidance).  The Airline Defendants promised to submit Mr. Seklecki's request for an exemption for his son for prompt review once received, but even that was not acceptable to Mr. Seklecki.

The Airline Defendants have taken as many measures as possible to facilitate the ability of the minor son to fly to Boston without a mask.  Moreover, <u>Southwest is willing to allow the son to receive a mask exemption because of his medical condition, and, because of the son's young age (4 years old), is able to allow him to fly without submitting a negative COVID-19 test</u>.

Yet Plaintiff has refused; instead, electing to press for further relief on his underlying claims as a condition of his son's travel.

### STATEMENT OF FACTS

Pursuant to guidance issued to the airlines by the DOT and the FTMM, airlines are permitted to impose certain requirements or conditions on a person requesting an exemption from

---

[2] On each ticket, purchased on-line, Mr. Seklecki attached Applications for Exemptions to the Federal Mask Mandate that included 20-point arguments against the FTMM.  The Airline Defendants to do not accept any of these demands if the Sekleckis are able to board these flights. Moreover, Mr. Seklecki crossed out the requirement on each application that allows the airlines to share the application and supporting information with a third-party medical provider, the CDC and other government authorities and service providers.  See Exhibits 2 and 3.  The Airline Defendants cannot agree to that change. For the Sekleckis to fly and these flights, they must accept the terms without redaction.

the FTMM.    Consistent with DOT guidance, American and Southwest are prepared to grant Plaintiff's son an exemption to the Mask Mandate provided: (1) the airline receives sufficient proof of a medically diagnosed physical or mental disability that causes the son not to be able to wear or safely wear a mask on the airplane, and (2) with regard to American, Plaintiff submits to the airline at the time of check-in a negative COVID-19 test for his son taken within 72 hours of departure of the flight to/from Boston at the time of check-in.

With regard to American, Mr. Seklecki refuses to provide a negative  COVID-19 test. Specifically, Plaintiff told Airline Defendants in an email on February 11, 2022:

> **I will not require my son to take a COVID-19 test as this would be illegal.** CDC's testing order only applies to international flights from a foreign country to the United States. Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. The only legal way airlines could possibly impose a testing requirement is if ALL customers, regardless of disability, were forced to submit virus test results.

Michael Seklecki Email February 11, 2022, **Exhibit 4 hereto** (emphasis added)  In other words, even if American or Southwest grants a face mask exemption to Mr. Seklecki's son, the Plaintiff will not accept the exemption if Plaintiff is required to provide a timely negative COVID-19 test, as both American requires – consistent with DOT guidance and the FTMM.

On February 13 and 14, 2022, Plaintiff provided notifications to counsel for American and Southwest that he had booked air transportation from Miami to Manchester, New Hampshire to travel on February 22, 2022 in the case of American (with at least some of the transportation to be provided by American Eagle, which is separate from American), and on February 23, 2022 from Manchester, New Hampshire to Miami with regard to Southwest.  Plaintiff did not previously hold a reservation on either airline, nor has he indicated that he had attempted to book a flight or apply

for a mask exemption on any other carrier.  The emails from Plaintiff are attached as **Exhibits 5 and 6** hereto (with the attachments to those emails at Exhibits 2 and 3, respectively).

On February 14, 2022, Plaintiff emailed counsel for the Airline Defendants a redacted letter from Massachusetts General Pediatrics dated February 14, 2022 confirming a doctor's appointment for Plaintiff's son at 11:00 a.m. on February 23, 2022.  Plaintiff did not at that time attach a letter from a medical professional regarding Plaintiff's son in connection with either email to counsel for American or Southwest.  In fact, the request was not even made until February 15. Still, Plaintiff did make specific demands of each airline to which he insists they agree immediately.  For example, with regard to American, Plaintiff stated:

> "I request a letter from American Airlines stating the following. I ask for this letter to be sent no later than noon Tuesday, otherwise I will need to ask the judge Tuesday afternoon to schedule an emergency hearing Wednesday morning. Thank you for your assistance in obtaining this letter.
>
> >>>>>>>>>>>>>>
>
> February XX, 2022
>
> Dear Michael Seklecki Sr.:
>
> You and your son, Michael Jr., are medically exempt from wearing a face mask on all American Airlines and American Eagle flights for the remainder of 2022. We agree to comply with the law regarding your mask-exempt travel as follows:
>
> 1.      Even though you have provided us advance notice of your disabilities, you have objected to us requiring passengers seeking mask exemptions to do so in advance. We acknowledge this is prohibited by federal regulation: "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.
>
>         Therefore, we agree that you will not be required to notify us in advance of any future American or American Eagle flight as this letter provides you both a mask exemption for the rest of 2022. You shall show this letter to an American or American Eagle customer-service agent when checking in for your flights. If you are provided any trouble, you shall ask the agent to immediately call <name(s) of American disability services manager(s)> at <phone number(s)>.

2.      We acknowledge that our policy requiring disabled passengers who obtain a mask exemption to submit a negative COVID-19 test for each flight is discriminatory since nondisabled customers aren't subject to this same requirement. We agree with you that no provision of the Rehabilitation Act, Air Carrier Access Act, or ACAA regulations (nor any other law) permits airlines to require passengers submit a negative test for any communicable disease prior to domestic flights. The Centers for Disease Control & Prevention requires testing only for international flights bound for the United States (International Traveler Testing Requirement), and some foreign countries require testing for flights from the United States to those nations. If you and/your son travel internationally, you will be subject to these testing policies that apply to all passengers.

        You and your son do not need to submit a coronavirus test before any domestic flight on American and American Eagle pursuant to federal laws and regulations as well as CDC policy. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705 & 29 USC § 794(a).

3.      You have provided us with a medical certificate from your son's physician indicating he can't safely wear a mask. However, we acknowledge that an airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she **has** a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). We agree that this requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger **has** a communicable disease, i.e. has tested positive for the coronavirus.

        We will only require a medical certificate from you and/or your son if we have been informed by the CDC via its "Do Not Board" public-health system that you have been reported to have tested positive for COVID-19 or another communicable disease. If you do test positive for COVID-19, we request you do not seek to travel for at least five days after your positive test, pursuant to CDC recommendations. In this scenario, you and/or your son's medical certificate must include certification from a doctor or other healthcare professional that since you tested positive for COVID-19, you have recovered and tested negative.

        We acknowledge that requiring a medical certificate also violates the Convention on International Civil Aviation. We will abide by our responsibilities under CICA, which includes not requiring passengers with disabilities needing a mask exemption to submit a medical clearance (letter from doctor). We acknowledge that the United States has ratified CICA, which makes it binding

treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

However, consistent with U.S. law, we will require a medical certificate from you and/or your son, as described above, if we have been informed by CDC via its "Do Not Board" public-health system that you and/or your son have been reported to have tested positive for COVID-19 or another communicable disease.

4.    As recipients of federal funds, American agrees to obey the Rehabilitation Act. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

5.    We agree we will not take any retaliatory action against you such as seating you in the last row of the plane or banning you from flying with us because you are mask-exempt, pursuant to federal regulation: "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

6.    Although you have provided us with you and your son's medical disabilities, we acknowledge that you are not required to pursuant to federal regulation: "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT.

7.    We acknowledge that you did not agree to wear a face mask when you bought your tickets as our Contract of Carriage does not require any passenger to don a face covering.

8.    We acknowledge that requiring face masks without informed consent violates the Food, Drug, & Cosmetic Act by not giving passengers the legal option to refuse administration of a Food & Drug Administration unauthorized or Emergency Use Authorization medical device (a face mask). 21 USC § 360bbb-3(e)(1)(A)(ii)(III). We acknowledge that we must stop providing illegal and/or EUA masks to our passengers without informing them use of the device is optional and they must give informed consent.

We agree that if we continue offering FDA unauthorized or EUA face masks, we will inform customers that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown");

or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.

We also agree to inform all passengers of the 68+ health risks of covering their sources of oxygen. We will make available to our passengers, in writing or via a weblink, the 227 scientific studies, medical articles, and videos showing the harms of force masking posted at https://bit.ly/masksarebad.

9.     We agree to stop misrepresenting to our passengers that federal law requires them to wear face masks. We acknowledge Congress has never enacted any such law, and no statute in the U.S. Code includes such a requirement. We agree to immediately revise all information provided to passengers including, but not limited to, on our website, in airport signage, and announcements at boarding gates and on board planes that CDC and TSA orders mandate face masks. We also agree to inform all passengers that these government mandates are being challenged in at least 11 federal lawsuits. And as stated above, we will inform passengers that regardless of the CDC and TSA orders, federal law allows them to refuse to use an experimental medical device such as a face covering unauthorized by FDA or approved only under an EUA.

10.   We agree to immediately cease our policy that mask-exempt passengers must sit in the first row of First/Business Class or the last row of the Main Cabin. We agree not to force any mask-exempt passenger to change his/her selected seat to comply with federal regulation: "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

11.   We agree that you and your son will not be forced to change flights against your will because you are mask-exempt, in compliance with the Rehabilitation Act and Air Carrier Access Act."  (**Exhibit 5** hereto)

Plaintiff demands the same type of letter from Southwest (**Exhibit 6** hereto).  The Airline

Defendants cannot agree to these demands.

## ARGUMENT

**I.     PLAINTIFF HAS THE OPTION OF FLYING ON DELTA AIRLINES WHICH HAS GRANTED THE SON A MASK EXEMPTION IN THE PAST AND OPERATES MANY FLIGHTS FROM ORLANDO TO BOSTON.**

The Airline Defendants note that Mr. Seklecki has several viable options for flying with

his son to Boston for the medical appointments starting February 22, 2022.  The Sekleckis have

represented to the Court that they have in the past flown on Delta Airlines from Orlando to Boston, with his son not having to wear a mask, and Plaintiff has not offered any reason why he cannot fly with his son to Boston once again on Delta other than he does not want to do so now.  There are ample Delta Airlines flights between Orlando and Boston.  To the extent Plaintiff asserts that the Delta flight could cost more, or that he wants to use Southwest fare credits from an earlier cancellation, these monetary reasons do not form the basis for irreparable harm.

In an email to Justice Department counsel in this case dated February 12, 2022, Plaintiff Seklecki admitted that he was aware that "Delta has flights from Orlando to Boston" but that,

> We've encountered many problems with getting my son's medical waiver approved by Delta. Every time we fly, we must arrive earlier to check in than nondisabled passengers. We must undergo a medical screening by Delta's vendor STAT-MD, which violates the Air Carrier Access Act. We have almost missed flights while waiting on hold to talk to someone at STAT-MD. One time Delta finally approved his medical waiver at the check-in counter, then we had to run to the gate. On the plane, the flight attendants harassed us because my son didn't have his mask on, even though he got a waiver. She threatened to have us removed from the flight and call the police.

> The captain of the plane had to intervene and get a Delta supervisor to come to the plane with the correct paperwork, which delayed the flight. All the other passengers were annoyed.

> This example shows why the FTMM must be enjoined.

> Finally, we have credits from prior travel we had to cancel on Southwest due to the failure of that airline to grant our mask exemptions, so we will likely fly Southwest this month so we can use those vouchers.

Michael Seklecki Email February 12, 2022, **Exhibit 7 hereto.**

This email from Mr. Seklecki does not state that his son will be precluded from flying to Boston with a mask exemption from Delta or explain why alternate transportation (via air or otherwise) is unavailable.  In other words, Mr. Seklecki chooses not to fly on Delta or another airline that is not a Defendant in this action, even though Delta has apparently allowed his son to

fly without a mask in the past.  In sum, there is no basis for the Court to issue an emergency order with regard to the son's flight to Boston.

## II.     SOUTHWEST IS WILLING TO LET PLAINTIFF'S SON TRAVEL WITHOUT A MASK AND WITHOUT A NEGATIVE COVID-19 TEST.

In addition to the option of flying again on Delta, Plaintiff can transport his son to Boston on Southwest Airlines without the son having to wear a mask or give a negative COVID-19 test. But Plaintiff insists on flying on American and on flying only under terms he dictates. Accordingly, there is no legitimate basis for Plaintiff to assert that his son will be irreparably harmed by the conduct of the Airline Defendants.

## III.    THE DOT ENFORCEMENT NOTICE REGARDING AIRLINE EXEMPTIONS FROM THE FEDERAL TRANSPORTATION MASK MANDATE ALLOWS FOR CONDITIONS TO APPLY TO QUALIFY FOR A MASK EXEMPTION, INCLUDING A NEGATIVE COVID-19 TEST.

The FTMM provides for air carriers to follow a process by which the carrier evaluates the case of a customer who claims a disability.  The CDC Order, which is part of the FTMM, titled "Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs," CDC, 86 Fed. Reg. 8025, 8027 (Feb. 3, 2021), exempts a "person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability."

In February 2021, the DOT – which enforces the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705[3] – issued guidance to the airlines, which confirms that "both the CDC Order and

---

[3]Congress did not create a private right of action to sue airlines for an alleged violation of the ACAA.  *Love v. Delta Air Lines, Inc.*, 310 F.3d 1347 (11th Cir. 2002); *see also Dilldine v. Am. Airlines, Inc.*, No. 3:18-cv-178, 2019 WL 3821789, *4 (S.D. Ohio Aug. 12, 2019) ("there is no private right of action created by the Act"); *Thomas v. Northwest Airlines Corp.*, No. 08-11580, 2008 WL 4104505, *2 (E.D. Mich. Sept. 2, 2008) ("there is no private cause of action under the ACAA").  Rather, persons with a disability claiming discrimination in violation of the ACAA may file an administrative complaint with DOT pursuant to 14 C.F.R. Part 382.

[14 C.F.R.] Part 382 permit airlines to require passengers to consult with the airline's medical expert and/or to provide medical evaluation documentation from a passenger's doctor sufficient to satisfy the airline that the passenger does, indeed, have a recognized medical condition precluding the wearing or safe wearing of a mask."  DOT Notice of Enforcement Policy: Accommodation By Carriers of Persons with Disabilities Who Are Unable to Wear Safely Wear Masks While on Commercial Aircraft, at 6 (Feb. 25, 2021) ("DOT Notice"), Pl. Compl. Ex. 51, Doc. 31-2. Moreover, DOT and the FTMM provide that "airlines may impose protective measures to reduce or prevent the risk to other passengers," including "a negative result from a SARS-CoV-2 test, taken at the passenger's own expense, during the days immediately prior to the scheduled flight." *Id*. at 6-7.

### The Airline Defendants' Exemption Processes

Below are the processes adopted by the two Airline Defendants with regard to requests for exemption from the FTMM.   These processes have been expressed to Mr. Seklecki who has stated plainly that he refuses to follow them.

### A.      The American Airlines Exemption Process.

According to Plaintiff's exhibits, American stated the following with regard to its "Health and testing requirements":

Face coverings

"U.S. federal law requires that you wear a face covering at all times while indoors at the airport and on board your flight, regardless of vaccination status.  If you refuse to wear one, you may be denied boarding and future travel on American. You may also face penalties under federal law."

"Exemption for customers with disabilities*"

"If you may be exempt because you have a disability that prevents you from safely wearing a mask as defined in the American with Disabilities Act (42 USC 12101 et seq) you must contact us at least 72 hours before you plan to travel with documentation confirming a negative COVID test or recovery."

"*This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability.  It is not meant to cover persons for whom mask-wearing may only be difficult."

Pl. Comp. Ex. 16, Doc. 31-1, Pages 75 -77.  In addition, American requires seating of the exempted passenger either in the first row of first class or the last row of the main cabin.

Plaintiff Seklecki asked American for mask exemptions for a trip from Orlando to Phoenix through Austin, Texas in November 2021.  Exhibit 16 to Plaintiff's Complaint, Doc. 31-1, pages 78-81, contains Plaintiff's mask request to American.   In Exhibit 17 to the Complaint, Doc. 31-1, American emailed Plaintiff as follows:

"American provides limited exemptions from the federal mask mandate for customers with a disability who cannot wear or mask, or cannot safely were a mask, because of their disability as defined by the Americans with Disabilities Act (ADA).  In order to receive consideration for an exemption, you must contact us at least 72 hours before you plan to travel.  An official, dated letter from a licensed medical provider must be provided at least 24 hours prior to the scheduled departure of your flight and must contain the following elements:

- Official letterhead from the medical provider with their license number, contact information and date

- Customer's name

- Attestation that the customer has a medically diagnosed physical or mental disability that qualifies under the Americans with Disabilities Act (42 USC 12102 et. seq) and because of that disability cannot wear or safely wear a mask for the duration of travel

- Signature of the licensed medical provider

Once completed, letters should be emailed as an attachment to SAC@aa.com with the subject containing the letters NMOK, the record locator of the customer, initial date of travel and the customer's name.

If your request is approved, it will be conditioned upon validation of a negative COVID test (either PCR or Antigen) taken within 72 hours of departure – this must be presented upon check-in at the airport.  Additionally, the approval is only valid on requested reservation.

Please keep in mind that these exceptions are very narrow in definition and includes a person with a disability who cannot wear a mask for reasons related to the disability.  Your medical provider may be contacted for additional information.  Additionally, AA may consult with a third-party medical provider regarding the letter."

*Id*. at 82-88.

Writing on behalf of Mr. Seklecki, Lucas Wall – the plaintiff in the related cases in the United States District Court for the Middle District of Florida – emailed American on November 10, 2021, with regard to a planned American Airlines trip involving both Lucas Wall and Plaintiff Seklecki (but not the Plaintiff's minor son), stating:

To: sac@aa.com

"Dear American Airlines:

I write on behalf of Michael Seklecki.  He is scheduled to fly with me from Florida to Arizona on November 12.  He has submitted a mask-exemption demand for our flights from MCO to PHX via AUS.  See attachment.  Also attached are notes on American's numerous illegal mask policies.

Please be advised I am the lead plaintiff in a class-action lawsuit suing seven airlines for discriminating against the disabled by requiring masks be worn even though we suffer from medical conditions and can't safely wear a mask.  Wall v. Southwest Airlines, No. 6:21-cv-1008 (M.D. Fla.)  Your exemption procedures violate the Air Carrier Access Act and numerous other laws, regulations, and treaties.  Mr. Seklecki has contacted me about joining as a plaintiff should his mask exemption be rejected.

Please send him a letter granting his mask exemption.  If you do not, I ask you have your lawyer contact Mr. Seklecki as soon as possible.  If his mask-exemption demand is denied, I plan to soon add American as a defendant in this lawsuit."

Pl. Comp. Ex. 16, Doc. 31-1, page 74.

On October 26, 2021, Mr. Wall sent outside counsel for Spirit Airlines in Case No. 1008 in the Middle District of Florida a similar missive again on behalf of Mr. Seklecki (whom Wall copied on the email), Pl. Ex. 10, Doc. 31-1, at 42, which stated:

> I write on behalf of Michael and Samantha Seklecki, who are seeking to join the case of Wall v. Southwest Airlines as plaintiffs after Frontier denied them boarding Saturday because their son, Michael Jr. can't wear a face mask due to his Autism Spectrum Disorder.

> \*        \*        \*

> I write seeking your intervention to make sure this does [not] become another major incident, which would give the Secleckis standing to join Wall v. Southwest Airlines as a plaintiff against Spirit in addition to Frontier.

> The incident with Frontier has attracted national media attention, and I have no doubt any similar refusal to transport by Spirit will result in similar negative publicity for your client because it continues to violate numerous laws with its mask policy.

**B.      The Southwest Airlines Exemption Process**

Southwest also has a process for considering and granting exemptions to the FMM for medical disabilities, which is available online:

https://www.southwest.com/html/customer-service/unique-travel-needs/customers-with-disabilities-pol.html/?clk=PROMISE_FAQ#unique_travel_needs_allergies_disabilities_pol_tab_list_tab_14_scroll>

Prior to filing this suit and requesting "emergency relief," Mr. Seklecki had not presented a request for exemption from the FMM to Southwest. Under the Southwest procedures, to obtain an exemption from the FTMM, the Passenger must submit (1) a fully completed "form" available on the Southwest website "executed by the Passenger making the request, or if the Passenger requesting a mask exemption is a minor child, the parent or guardian of such minor child"; and (2) a "signed letter from the requesting Passenger's Medical Physician on the Physician's letterhead

stating that the Passenger with a disability has a recognized medical condition precluding the wearing or safe wearing of a mask because of their disability."  In addition:

1)      Once Southwest Airlines receives a mask exemption application in line with the above criteria, at Southwest's request to Passenger, Passenger may undergo a private medical screening (over the phone) with a third-party medical provider (Southwest Airlines' vendor StatMD).  If Southwest preliminarily approves a mask exemption after reviewing the Passenger's PDF document and the Medical Physician's letter and after receiving the third-party medical provider's affirmation for travel, if required, Southwest will contact the Passenger or his parent to discuss any need to change your travel dates and/or flights and remind the Passenger or parent of the need to obtain a qualifying COVID negative viral test.

2)      No later than 24 hours prior to the Passenger's scheduled departure(s), Passenger must provide evidence of Passenger's qualifying COVID negative viral test result. A qualifying COVID negative viral test result is defined as a physical or electronic documentation of a qualifying COVID negative viral test taken within three (3) calendar days preceding the Passenger's scheduled date of travel. A viral test means a viral detection test for current infection, which is a nucleic acid amplification test with observation approved or authorized by the relevant national authority for the detection of SARS-CoV-2.

3)      Roundtrip travel will require an additional qualifying COVID negative viral test result taken within three (3) calendar days preceding the Passenger's scheduled date of return travel and submitted no later than 24 hours prior to the Passenger's scheduled departure, unless the Passenger's return flight is within three (3) calendar days of the date of the initial negative COVID-19 departure test.

Although a COVID-19 test is generally required for a passenger who received a mask exemption, Southwest is willing to consider waiving the COVID-19 test requirement due to a disability for a child who is under 5 years old and is otherwise exempt from the mask requirement. Southwest informed Plaintiff on February 15, 2022, that his son could utilize the mask exemption afforded to the son without having to provide a negative COVID-19 test result, but Mr. Seklecki declined.

**IV.     BY EMAIL ON FEBRUARY 11, 2022 TO THE AIRLINE DEFENDANTS, PLAINTIFF REFUSED TO ACCEPT THE CONDITION OF A NEGATIVE COVID-19 TEST.**

Plaintiff has not provided either Airline Defendant with any documentation to review/evaluate for a mask exemption for a flight next week to Boston except what purports to be a letter from a Registered Nurse, received early this afternoon.  Pursuant to airline policy, a physician's letter documenting necessity for a mask exemption is required in advance of travel.  Yet Mr. Seklecki has not provided such a letter in connection with the flights he has booked for next week.  Exhibit 1 to his Complaint contains two letters from a Hunt Club Pediatrics, with the first one undated and the second one dated October 26, 2021.  Plaintiff did not provide a more recent letter from a physician regarding his son's medical condition.

In addition, Mr. Seklecki is adamant that he will refuse to agree to the Airline Defendants' exemption requirements, including, in the case of American, the need for a negative COVID-19 test.  After the status conference with the Court on February 11, 2022, Plaintiff sent an email to counsel for the Defendants which stated:

> Hello lawyers. This message is to follow up on today's hearing. I will be looking for plane tickets for my family to travel to Boston in the next day or two. I will advise you when I have a booking code, if the tickets are booked with American or Southwest. If I book on another carrier not a party to this lawsuit, I will also let you know so that way you'll be aware there is not an emergency next week.
>
> I want to be clear about my expectations:
>
> 1.       Advance notice of travel is illegal: "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25. However, as the judge asked, I will provide advance notice despite the fact an airline may not ask for it.
>
> 2.       Requiring a doctor's note is illegal. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a

condition for being provided transportation." 14 CFR § 382.23(a). You already have my son's doctor's note anyway. See Exhibit 1.

3.      Requiring a medical screening with any airline or contract doctor is illegal. "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d). I do not consent to my son undergoing a medical screening.

4.      **I will not require my son to take a COVID-19 test as this would be illegal. CDC's testing order only applies to international flights from a foreign country to the United States. Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. The only legal way airlines could possibly impose a testing requirement is if ALL customers, regardless of disability, were forced to submit virus test results.**

5.      You may not require us to take a different flight if the plane is full. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17.

6.      You may not ban us from a flight if there's another mask-exempt passenger on board. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17.

7.      You may not require us to change seats. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

If an airline attempts to enforce any of the above, with the exception of advance notice and existing doctor's note, I will ask the judge for an emergency hearing Wednesday morning as she noted as a possibility if we can't reach an agreement by Tuesday.

Michael Seklecki Email February 11, 2022, **Exhibit 4 hereto** (emphasis added**).**

In sum, Plaintiff Seklecki can fly with his son to Boston (or Manchester) on Delta, but so far has opted not to do so.  Plaintiff Seklecki also has been approved to obtain a mask exemption for his son for this flight from Southwest, and Southwest is not requiring a negative COVID-19 test for the son to fly without a mask.  But Plaintiff insists on a variety of other conditions that

must be agreed to before he will accept Southwest's offer of a no-test-required, mask exemption

for the son..  In addition, American may grant a mask exemption if Mr. Seklecki agrees to provide

a negative COVID-19 test taken by his son within 72 hours of the flight.  Mr. Seklecki refuses to

agree to the negative COVID-19 test unless all the passengers on the airplane who are wearing a

mask also provide a negative COVID-19 test.  That is not reasonable or required under the law.  It

is also concerning that Plaintiff appears resistant to compliance with FAA and DOT enforced air

carrier regulations.

**V.     PLAINTIFF IS USING THIS LITIGATION TO TRY TO REQUIRE THE
        AIRLINE DEFENDANTS TO CEASE AND DESIST FROM COMPLIANCE
        WITH THE FTMM AND THE DOT ENFORCEMENT NOTICE WITH REGARD
        TO MASKS.**

Not only do Plaintiff's emails dated February 13 and 14, 2022 regarding the tickets to travel

to the Boston area (**Exhibits 5 and 6** hereto) demand that American and Southwest stipulate to a

wide range of legal positions that Plaintiff and his anti-mask coalition members are seeking to

establish in this case, but also in the other cases they have filed, including the recently filed similar

complaints in the Western District of Kentucky (Case No. 3:22-cv-23-BJB) and the Eastern

District of Virginia Case (No. 3:22-cv-052), as well as the pending cases in the Middle District of

Florida: Case Nos. 21-cv-00975-PGB-DCI and 21-cv-01008-PGB-DCI.  This litigation tactic

reflects the fact that Plaintiff appears less concerned with his son's emergency need to travel and

more focused on using this litigation to further his overall objections to the FTMM and the efforts

by Plaintiff and his anti-mask coalition to secure a declaration that FTMM is unlawful, an effort

that has already failed in the D.C. Circuit, the Supreme Court and the Middle District of Florida.

In any event, Plaintiff has failed to demonstrate any need for emergency relief from this Court

and/or has demonstrated that any "emergency" is of his own making.

## CONCLUSION

For the foregoing reasons, the Airline Defendants request that the Court deny the relief requested in Seklecki's recent "Emergency Motion" and affirm that the Airline Defendants may apply the rules governing Exemption Requests from the Federal Travel Mask Mandate to Mr. Seklecki's request as they would to all other passengers.

Dated: February 15, 2022

Respectfully Submitted,

AMERICAN AIRLINES, INC. and
SOUTHWEST AIRLINES CO,

By their Counsel,

/s/ Christopher A. Duggan
Christopher A. Duggan (BBO No. 544150)
SMITH DUGGAN BUELL & RUFO LLP
55 Old Bedford Road
Lincoln, MA 01773
(617) 228-4400
Chris.Duggan@SmithDuggan.com

M. Roy Goldberg
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
(202) 728-3005
Email: roy.goldberg@stinson.com
Admitted *Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that, on this 15th day of February 2022, I electronically filed the foregoing Status Report through the CM/ECF system, which will send notification to the registered participants as identified on the Notice of Electronic Filing, which includes all parties in this case.

/s/ Christopher A. Duggan    

Christopher A. Duggan (BBO No. 544150)
