IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL SEKLECKI,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        Case No. 1:22-cv-10155-PBS
                                     )
CENTERS FOR DISEASE                  )
CONTROL & PREVENTION, *et al*.,      )
                                     )
        Defendants.                  )

**AIRLINE DEFENDANTS' OPPOSITION TO MOTION TO VACATE
COURT ORDER GRANTING PRO HAC VICE APPLICATION**

**INTRODUCTION**

Defendants, American Airlines, Inc. and Southwest Airlines Co. ("Airline Defendants"), oppose "Plaintiff's Combined Opposition to Airline Defendants' Motion to Admit Roy Goldberg *Pro Hac Vice* & Motion to Vacate Court Order Granting Admission before the Time Expired for [Plaintiff] to File an Opposition," Feb. 21, 2022 ("Pl. Vacate Motion"), Doc. 61.  Mr. Goldberg plainly meets all of the qualifications for practicing before this Court, as the Court has found.  Doc. 14.  Mr. Seklecki's "Vacate Motion" is simply a baseless attempt to deny the Airline Defendants their choice of experienced airline counsel by making reckless and unsubstantiated allegations regarding outside counsel for the Airline Defendants.  The Court should not credit, nor tolerate, such allegations, whether from a counsel or a *pro se* party.

**ARGUMENT**

Plaintiff asserts that he has heard from another member of the Lucas Wall anti-mask coalition – Aaron Abadi – that Mr. Abadi will "soon" file a case in federal district court in New York or New Jersey which will "charg[e] numerous yet-to-be named employees of the various airlines and Roy Goldberg with conspiracy to interfere with the civil rights of the disabled and/or

neglecting to prevent interference with the civil rights of the disabled pursuant to 42 USC §§ 1985 and 1986." Doc. 61, at p. 4, ¶ 4. Quoting Mr. Abadi, Mr. Seklecki asserts, "Mr. Goldberg is lead counsel for four airlines in *Wall v. Southwest Airlines*" *et al.* Case. No. *et al.*, 6:21-cv-01008-PGB-DCI (M.D. Fl.) ("Case No. 1008"), and that Mr. Goldberg is allegedly "aiding and abetting the Airline Defendants' conspiracy to interfere with the civil rights of the disabled by telling them to break the law in numerous ways, violating not only the law but also canons of legal ethics." Doc. 61, at p. 7. Mr. Secklecki charges that, by providing legal advice to airline clients in other cases on their rights and responsibilities under applicable law, Mr. Goldberg is somehow involved in a conspiracy. Indeed, Mr. Seklecki's Complaint in this case purports to allege violations of 42 U.S.C. § 1985(3) (Doc. 1, Count 12, ¶¶ 610-611, p. 94) and § 1986 (Count 13, ¶¶ 614-619, pgs. 94-95).

Needless to say, there is nothing to these unfounded and scurrilous charges. Mr. Goldberg is well-versed in the applicable law relating to airlines and has advised his clients accordingly. He has done what good lawyers do and will continue to do.

If Mr. Secklecki's theory were followed, no party could ever obtain legal advice from counsel that the opposing party did not like or was upset with the consequences of counsel's representation of his or her client. Fortunately for the adversarial legal system, such is not the law. A plaintiff such as Mr. Seklecki (and Mr. Abadi) cannot pursue a claim under 42 U.S.C. § 1985 or § 1986 against counsel for a defendant simply because of counsel's representation of the defendant entity.

Section 1985(3), 42 U.S.C., states:

**(3) Depriving persons of rights or privileges**

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly

or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

In addition, 42 U.S.C. § 1986, applies to allegations that a "person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . ."  A prerequisite for a claim under section 1986 for neglect to prevent a civil rights conspiracy is the existence of an actionable conspiracy under section 1985.  *Lowden v. William M. Mercer, Inc*., 903 F. Supp. 212, 218 (D. Mass. 1995).  Nothing of the sort exists here.

The allegations of Mr. Seklecki and his anti-mask coalition cohort Aaron Abadi, that Mr. Goldberg is somehow liable for civil conspiracy under sections 1985 or 1986, are groundless.  Not surprisingly, the courts that have addressed such a twisted argument have recognized that a plaintiff cannot sue counsel for a defendant asserting that counsel is involved as a co-conspirator under section 1985.  For example, in *Farese v. Scherer*, 342 F.3d 1223 (11th Cir. 2003) a federal prisoner filed a civil rights action against his former business partner and his former business

partner's attorneys, alleging that they engaged in a conspiracy to force him to withdraw a shareholder's lawsuit.  The prisoner filed a second action against the same defendants under RICO. The Eleventh Circuit Court of Appeals held that the defendant attorneys' alleged actions, if proven, could not be the basis for holding the lawyers liable under section 42 U.S.C. § 1985.  The Court stated:

> Because Farese alleges a conspiracy among Dude and Dude's attorneys, his appeal raises an issue of first impression in our circuit: whether attorneys operating within the scope of their representation may be deemed conspirators in a § 1985 conspiracy.  Unless we conclude that attorneys acting within the scope of their representation may be deemed conspirators in a § 1985 conspiracy, Farese's § 1985 claim would fail to state a claim upon which relief may be granted, as he would not have alleged a conspiracy.

> Few circuits have addressed the issue presented. The Third Circuit in *Heffernan v. Hunter,* 189 F.3d 405 (3d Cir. 1999), embarked on an exhaustive discussion of § 1985 conspiracies in the attorney-client context. In *Heffernan,* the plaintiff, an official with the Securities and Exchange Commission, filed suit pursuant to § 1985 against Hunter, an individual under investigation for insider trading, and Hunter's attorney, alleging that they conspired to file frivolous lawsuits and disseminate defamatory information to the media to intimidate and prevent him from testifying as a witness against Hunter in federal-court proceedings. *See Heffernan,* 189 F.3d at 408. The *Heffernan* court held that when an attorney's conduct falls within the scope of his representation of his client, a § 1985 conspiracy cannot exist. *See id.* at 413.  The court stated that "[t]he right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns." *Id.*

> Noting that disciplinary structures are currently in place to address any wrongful conduct by an attorney, the court stated that an attorney's conduct "within the scope of representation is regulated and enforced by disciplinary bodies established by the courts." *Id.* In fact, "[a]buses in litigation are punishable by sanctions administered by the courts in which the litigation occurs." *Id.; see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 46–47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (finding that federal courts enjoy inherent powers to sanction attorney conduct and that "the inherent power extends to a full range of litigation abuses").  Moreover, the court noted that an offended third party may also proceed against the offending attorney under state law or report the conduct to state disciplinary bodies. *See Heffernan,* 189 F.3d at 413.

> The court concluded that this regulatory framework "provides third parties with protection that is lacking in the corporate field." *Id.*

4

The *Heffernan* court further stated that as long as an attorney's conduct falls within the scope of his representation, the attorney is immune from allegations of § 1985 conspiratorial conduct. *See id.* The court noted, however, that it is "axiomatic that if the challenged conduct occurs outside the scope of representation, no reason for immunity exists and the attorney and the client, as individuals, could form a conspiracy." *Id.* The court cautioned that the scope of the attorney-client relationship is broad and that even if the challenged activity violates the canons of ethics, "so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge under section 1985." *Id.* Therefore, the Third Circuit explained that in order to plead a § 1985 conspiracy involving a client and his attorneys, one must prove that the attorneys were operating outside the scope of their representation. *See id.; see also Travis v. Gary Cmty. Mental Health Ctr., Inc.,* 921 F.2d 108, 111 (7th Cir.1990) (holding that no conspiracy existed between corporate executives and outside counsel in violation of § 1985(2) and stating that "[t]reating involvement of a lawyer as the key unlocking § 1985 would discourage corporations from obtaining legal advice before acting, hardly a sound step to take"); *Doherty v. Am. Motors Corp.,* 728 F.2d 334, 339–40 (6th Cir.1984) (concluding that the plaintiff did not present any evidence proving the existence of a conspiracy between the defendant and the defendant's attorneys because the attorneys "were motivated not by personal concerns but by concerns for their clients").

We agree with the well-reasoned opinion of the Third Circuit and hold that as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy. Although Farese alleged that Dude and his attorneys engaged in conspiratorial conduct in violation of § 1985, the attorneys did not engage in any conduct outside the scope of their representation. Furthermore, the actions and advocacy of the attorneys appear to have been for the sole benefit of their client rather than for their own personal benefit.

Because we cannot say that the actions of Dude's attorneys were beyond the scope of the attorney-client relationship so as to make them susceptible to characterization as a conspiracy under § 1985, we affirm the district court's dismissal of Farese's § 1985 claims against them. . . .

*Id*. at 1230-1232.

In *Hunter v. Henderson,* 189 F.3d 405 (3d Cir. 1999), relied on heavily by the *Farese* Court, a Securities and Exchange Commission ("SEC") investigator sued the target of an insider trading investigation and his attorney, under Civil Rights conspiracy statutes, alleging that they sought to intimidate the investigator, as a potential witness in an SEC prosecution, by filing a frivolous

lawsuit against him and using it to generate unfavorable publicity.  The district court granted the

defendants' motion to dismiss, and the investigator appealed.  The Third Circuit Court of Appeals

held that the investigator failed to establish an actionable conspiracy between the target and his

attorney under the Civil Rights conspiracy statute.  The Court explained:

> Both the section 1985(1) and 1985(2) claims require a conspiracy. Whether Heffernan has set out actionable conspiracies is therefore a threshold issue and one that we find dispositive.
>
> Looking to state law, the District Court concluded that no conspiracy can exist where an attorney's advice or advocacy is for the benefit of his client rather than for the attorney's "sole personal benefit." The Court found this principle consistent with federal law that perceives no conspiracy in the concerted activity of an employee and a corporation, usually termed the "intracorporate conspiracy doctrine."  There are few cases in the Courts of Appeals discussing attorney-client conspiracies in the section 1985 context, but two opinions do provide some guidance. In *Doherty v. American Motors Corp.,* 728 F.2d 334 (6th Cir.1984), the plaintiff alleged a conspiracy under section 1985(2) between a corporation and its inside, as well as its outside, counsel. Citing the general rule that a corporation cannot conspire with its agents, the Court found that no conspiracy existed, remarking, "it is clear from the record that the actions of [the corporation's] attorneys were motivated not by personal concerns but by concerns for their clients." *Id.* at 339–40.
>
> The other case, *Travis v. Gary Community Mental Health Center, Inc.,* 921 F.2d 108 (7th Cir.1990), included a claim under section 1985(2) by an employee who alleged a retaliatory discharge by the defendant's employees. The Court concluded that joint conduct by employees did not amount to a conspiracy.  *Id.* at 110.  Of particular relevance is the Court's discussion about the defendant's consultation with its outside counsel. Holding that this too was not a conspiracy, the Court reasoned that "[t]reating involvement of a lawyer as the key unlocking § 1985 would discourage corporations from obtaining legal advice before acting, hardly a sound step to take." *Id.* at 111.

*Id*. at 411-412.

The Court added that, "[a]lthough the case law on intracorporate conspiracies provides a

convenient analogy for the attorney-client situation, there are important differences between the

agency relationships involved in private corporate activities and those arising in the practice of

law.  The right of a litigant to independent and zealous counsel is at the heart of our adversary

6

system and, indeed, invokes constitutional concerns.  Counsels' conduct within the scope of representation is regulated and enforced by disciplinary bodies established by the courts. Abuses in litigation are punishable by sanctions administered by the courts in which the litigation occurs."

*Id*. at 412.   The Court further reasoned:

> It is, of course, axiomatic that if the challenged conduct occurs outside the scope of representation, no reason for immunity exists and the attorney and the client, as individuals, could form a conspiracy. *See Johnson* [*v. Hills & Dales Gen. Hosp.*], 40 F.3d [837] at 840–41 [(6 th Cir. 1994)] ; *Doherty* [*v. Am. Motors Corp.*]*,* 728 F.2d [334, (6th Cir. 1982)], at 339–40. However, the mere fact that attorneys have "mixed motives," such as "enhancing" their reputation by aggressive representation, does not remove their conduct from the scope of the agency. *See Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 328 (9th Cir.1982).
>
> The challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge under section 1985. "[S]imply because a lawyer's conduct may violate the rules of ethics does not mean that the conduct is actionable, in damages or for injunctive relief." *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277, 1284 (1992). The offended third party has a remedy under state law through court imposed sanctions or reference to state disciplinary bodies.
>
> The statements that Bochetto made on camera and the information in the press releases about Heffernan's conduct with Kelly were obviously aimed at discrediting him as a witness against Hunter. As such, the attorney was acting within the scope of his representation. Whether the chosen means were ethical or appropriate is a separate issue.
>
> Attorneys might use unethical tactics in representing clients and yet remain squarely within the scope of their agency.  We cannot say that the activities of Bochetto and his firm were beyond the scope of the attorney-client relationship so as to make them susceptible to characterization as a conspiracy under section 1985. Therefore, because Heffernan has failed to establish a conspiracy under either section 1985(1) or (2), we must affirm the dismissal of this case in its entirety."

*Id.* at 413-414.

Here there is no allegation – much less any proffered evidence – that Mr. Goldberg has done anything other than represent his airline clients to the best of his abilities.  There is no basis for disqualifying Mr. Goldberg from serving as counsel for the Airline Defendants as this Court

has already found.  Docket Nos. 14, 48.   Mr. Seklecki's baseless accusation that Mr. Goldberg is liable under 42 U.S.C. §§ 1985 or 1986, because he represented airlines competently in another matter, involving a *pro se* party not before this Court, does not change this conclusion.

Mr. Goldberg's demonstrated expertise in aviation litigation, including the application of the Federal Transportation Mask Mandate, will aid both his clients and this Court in arriving at a just and proper conclusion.  Where the parties have identified "a specific and logical reason" for their request to have counsel admitted *pro hac vice*, denial of the request is an abuse of discretion absent evidence specifically supporting the opposition.  *Roma Construction Co. v. aRusso,* 96 F.3d 566, 577 (1st Cir. 1996).  None exists here.

The true motivation behind this latest filing is an effort by Mr. Seklecki to deprive Southwest Airlines and American Airlines of counsel of their choice.   Courts should not "lightly interrupt the relationship" between a lawyer and client, *Bryan Corp. v. Abrano*, 474 Mass. 504 509 (2016), which is exactly what Mr. Seklecki is attempting to do here.  See: *Roma Construction Co. v. aRusso,* 96 F.3d at  577 (reversing the denial of a *pro hac vice* motion); *Freeman v. Chicago Musical Instrument Co*., 689 F.2d 715, 721 (7th Cir. 1982) (vacating an analogous disqualification order based upon perceived conflict of interest and noting "disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing.")

Motions like this one compel the parties to invest time and effort in preparing responses, unfairly foist significant legal expense on the responding parties, and divert the Court from the real issues at hand.  Mr. Seklecki bears the burden of proof contesting Mr. Goldberg's *pro hac vice* admission, and he has presented nothing to the Court that remotely sustains that burden.

## **CONCLUSION**

For these reasons, the Plaintiff's motion to vacate (Doc. 61) should be denied.

Respectfully Submitted,

AMERICAN AIRLINES, INC. and
SOUTHWEST AIRLINES CO.,

By their Counsel,

/s/ Christopher A. Duggan
Christopher A. Duggan (BBO No. 544150)
SMITH DUGGAN BUELL & RUFO LLP
55 Old Bedford Road
Lincoln, MA 01773
(617) 228-4400
Email: Chris.Duggan@SmithDuggan.com

Dated: February 22, 2022

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of February, 2022, I electronically filed the foregoing Airline Defendants' Opposition to Plaintiff's Motion to Vacate (Doc. 61), which will send notification to the registered participants as identified on the Notice of Electronic Filing, which includes all parties in the case.

/s/ Christopher A. Duggan
Christopher A. Duggan (BBO No. 544150)