IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL SEKLECKI,               )
                                )
        Plaintiff,              )
                                )
v.                              )        Case No. 1:22-cv-10155-PBS
                                )
CENTERS FOR DISEASE             )
CONTROL & PREVENTION, *et al.*, )
                                )
        Defendants.             )

## AIRLINE DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR SANCTIONS

### INTRODUCTION

Defendants American Airlines, Inc. and Southwest Airlines Co. ("Airline Defendants") oppose the Motion of Plaintiff Michael Seklecki ("Seklecki") for Sanctions personally directed at Attorney Christopher Duggan and Attorney Roy Goldberg.  ECF No. 87.  Seklecki's motion is based upon statements in the Airline Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 68) filed on March 1, which were, and remain, entirely accurate.  Perhaps this current motion is filed in an effort to intimidate the Airline Defendants or their counsel.  If so, the filing is itself not but futile but is in itself a Rule 11 violation.

Unsubstantiated and erroneous motions like this one are not helpful to the Court or to the parties.  They result in a waste of time and energy that should be devoted to the merits, if any, of the Plaintiff's allegations or potential counterclaims.  Plaintiff's status as a *pro se* litigant does not entitle him to make scurrilous and unfounded claims against counsel who have a combined history of more than 60 years of practicing law in this and other courts across the country.  They must stop.

<u>FACTS</u>

<u>Seklecki Failed to Check in on Time for Flight #1526 Which Was the Only Reason He and His Son were Not Allowed to Board the Flight.  It Had Nothing to do with the Mask Exemption.  Counsel's Representation that American had Accommodated Seklecki's Request to Fly with a Mask Exemption was Entirely Accurate.</u>

Seklecki's Motion accuses counsel for American Airlines of "lying in papers filed with this Court on March 1."  ECF No. 87, p. 1.  Although he stretches out his attack for almost eight (8) pages, his argument boils down to this: defense counsel should be sanctioned because they told the Court in their Opposition to his Motion for Preliminary Injunction (Doc. 68) that American Airlines had made it possible for MS Jr. to fly with a mask exemption at least for a trip to the Boston area on February 22 and 23, when actually, he asserts repeatedly, "it REFUSED to transport us."  ECF No. 87, p. 2, emphasis in original.  He goes on:

> "I am not sure what universe American's lawyers inhabit, but here in this solar system refusing to check in a 4-year-old disabled boy holding an exemption letter from the airline because he can't safely wear a mask is not in any way 'accommodating' us.  This is another sanctionable lie."  *Id.*

These and similar smears might be easily ignored were they not so personal – and so demonstrably false.  Here are the facts, established on the record:

1.  The Airline Defendants agreed to let MS Jr. fly to the Boston Area for a medical appointment on February 23 with a mask – exemption.  ECF Nos. 99-4 to 99-6.  American's exemption was conditional on presentation of a negative COVID-19 test taken no earlier than 72 hours before the scheduled flight.  ECF Nos. 99-4 and 99-5.  This was communicated to Mr. Seklecki twice on February 16.  *Id.*

2.  On February 13, 2022, Lucas Wall purchased tickets for Seklecki and his son to Fly to the Boston area on February 22.  He bought a one-way ticket on American leaving from Miami on Flight #1526, connecting in Reagan National (DCA) and

arriving at Manchester, NH at 10:23 PM on Flight #5283.  ECF No. 99, Simon-Narcisse

Declaration, ¶ 7; ECF No. 99-1, Seklecki Passenger Name Record ("PNR").

3.  American noted the Mask Exemption on MS Jr.'s PNR prominently in
several places including in a box on the very front of the PNR entitled "SSR" meaning
"Special Service Request," as well as in several other places. The abbreviation
"NMOK" means "No Mask."  Exhibit A, Declaration of Irina Spence ("Spence
Declaration"), ¶¶ 10-12.  The allegation Seklecki makes repeatedly that this the mask
exemption was not on the Passenger Notes in the Computer record is baseless.  Exhibit
A, Spence Declaration, ¶¶13-15.

4.  Defense Counsel were entirely justified in representing to this Court that
American had accommodated Mr. Seklecki and his son for Flight #1526 from MIA to
DCA, and the connecting flight #5283 from DCA to MHT.  ECF No. 68, p. 2-3.  The
business records of American prove this.

5.  That same PNR record also proves exactly what did happen on February 22
at the Miami International Airport:  Seklecki failed to check in on time and he missed
the flight.  Ex. A, Spence Declaration, ¶¶ 16, 23-27; ECF No. 99, Declaration of
Innolene Simon-Narcisse  ¶¶ 8-10, 13.

6.  Soon after February 24, Seklecki began making his unfounded claims that
American denied him boarding despite having the mask-exemption letters.  His
arguments have changed with the prevailing winds, though.  At first, he claimed that
he showed up at the Miami International Airport some two and one-half hours before
the 5:20 fight was to depart, got in line, and tried to check in only to have the Customer
Service Representative, Innolene (Simon-Narcisse) refused to look at the Mask

Exemption letter or the negative COVID-19 test result which is why they missed the flight.  ECF No. 99-7, Seklecki Feb. 22 Email; ECF No. 74-1, Seklecki Declaration, ¶¶ 23-26; Exhibit A5 to Spence Declaration, Seklecki Feb. 28 Email.   That is demonstrably false and in fact is shown on both the PNR and a time-stamped surveillance camera.  ECF No. 99-10, Surveillance Video Screenshots.

7.   Now he apparently admits that he did not talk to Ms. Simon-Narcisse until *after* Flight #1526 had closed (which is true) but contends that the delay was caused by some unidentified American employee at some unidentified telephone station who supposedly refused to check them in - apparently speaking with that person for hours while he was standing in the Miami airport within walking distance of the ticket counter.  See, Exhibit B, March 18, 2022 Seklecki Email; *compare* ECF No. 74-1, Seklecki Declaration, ¶¶ 23-26.  To say this stretches credulity is an understatement.

8.   The truth is demonstrably otherwise. Seklecki first tried to check in remotely at 5:01 PM for the 5:20 Flight #1520.  Ex. A, Spence Declaration, ¶ 24.  The computer would not let him do that for two reasons: first, he needed to show the negative COVID-19 test result to the Customer Service Representative at the ticket counter, which he was told *twice* by American.  *See,* ECF Nos. 99-4 and 99-5.  Second, he was too late to check in remotely even without the mask exemption – remote check in is not allowed less than 30 minutes from scheduled departure.  Ex. A, Spence Declaration, ¶¶ 24-27.

9.   Seklecki sent Defense Counsel an email at 5:27 PM claiming that he had been denied boarding on Flight #1526.  ECF No. 99-7.  This was 11 minutes *before* he first spoke to the CSR at the Miami Airport, Innolene Simon-Narcisse, which occurred

at 5:38 PM as established by the surveillance camera.   ECF No. 99-2, Duggan Declaration, ¶¶ 18-20 and ECF No. 99-10.

10. The notes in the PNR dovetail almost exactly with the time-stamp on the surveillance video.  They show that Ms. Simon-Narcisse's first entry was at 5:43 PM when she added a direct flight from MIA to Boston  (Fight #2539) for Seklecki and his son (instead of the less convenient Manchester airport).  Ex. A, Spence Declaration, ¶ 28, ECF No. 99, Simon-Narcisse Declaration, ¶¶ 8-9.  In other words, they could have flown American directly to Boston had they simply paid the change fee and were told that by Ms. Simon-Narcisse before 6:00 PM (despite having missed their scheduled flight).  ECF No. 99, Simon-Narcisse Declaration, ¶¶ 13-17.

11. After seeing the PNR and the Simon-Narcisse Declaration, Seklecki changed course.  He now claims that an unknown and unnamed person from an undisclosed place supposedly with American had him on the phone for over two hours, denying that there was a "No Mask Exemption" (which plainly appears on the PNR) and refusing to check him in remotely.  Exhibit B, March 18 Seklecki Email.  American has reviewed its call records and to date has found no such call from Mr. Seklecki's cell phone to anyone at American from February 12 through February 28.  Ex. A, Spence Declaration, ¶ 7.

12. For purposes of this motion, however, the point is clear that the statements made by American's counsel in ECF No. 68 were firmly grounded in the established and documented facts, and that Mr. Seklecki's accusations are both unfounded and inappropriate.

ARGUMENT

The chronology of events established by both the documents and the surveillance video establish that counsel for American were correct in their representations in their Opposition to the Motion for Preliminary Injunction. American did accommodate Seklecki and his son for a flight to the Boston area on February 22. The Secleckis missed the first flight and Mr. Seklecki refused to take the direct to Boston which had been booked for them as a substitute by the CSR because Seklecki did not want to pay the change fee. The Motion for Sanctions against American's counsel is baseless and should be denied.

Seklecki Immediately Emails American Airlines' Lawyers and Threatens "Contempt"

At 5:27 PM on February 22, seven (7) minutes after Flight 1526 closed for boarding in Miami, Seklecki sent an email to both counsel for American threating to file a motion with this Court to hold American Airlines and certain American employees in "contempt" for not allowing him and his son to board the flight he had missed. ECF No. 99-7, Seklecki Feb. 22 Email. Plaintiff did not reveal that he had yet to reach the check-in counter before sending that email.

Within 90 minutes, shortly before 7:00 PM, Attorney Duggan called Mr. Seklecki in response. ECF No. 99-2, Duggan Declaration, ¶ 15. Seklecki reported that he and his son had booked a Delta flight from Miami to Boston, connecting through Atlanta, scheduled to arrive in Logan just before 1:00 AM so that his son would make the scheduled medical appointments later that day. *Id.* He also explained that his wife had earlier booked the same Delta flight after deciding to join them on the trip to Boston. *Id.* MS, Jr. in fact made his February 24 appointments.

Soon thereafter, Attorney Goldberg also responded to Seklecki's "contempt" threat, pointing out that (1) American was investigating the circumstances that lead to the missed flight; and (2) Seklecki had no basis for a "contempt" motion because American had voluntarily extended

a conditional mask-exemption to MS, Jr., which did not involve a court order.  Exhibit C, Goldberg Feb. 23 Email.

<u>The Airline Defendants File Their Opposition to Seklecki's Motion for Preliminary Injunction</u>

On March 1, The Airline Defendants filed their Opposition to Seklecki's Motion for Preliminary Injunction.  ECF No. 68.  As might be expected, much of the Opposition focused on the fact that Seklecki had no reasonable expectation of success on the merits of any of his claims in his 124-page Complaint.   In that context, the Airline Defendants were compelled to address Plaintiff's demands for an Order compelling the Airline Defendants to allow him and MS Jr to fly to Boston for the scheduled February 23 medical appointments.  They pointed out, accurately, that the parties had reached agreement on a mask exemption for MS Jr. that allowed him to fly to the Boston area for his February 23 appointments and that this request for relief was therefore moot.  ECF No. 68, pp. 2-3.  Airline Defendants specifically disclosed that something had occurred at American's Miami ticket counter that caused Seklecki and his son to change their flight on February 22 to Delta and that American was investigating the circumstances surrounding the incident.  The Airline Defendants stated:

> "Plaintiff reported an issue with the test result at the American check-in counter at the Miami airport, which American is investigating, and Plaintiff ended up flying to Boston on Delta.  The point is, he and his son arrived in Boston and could have returned to Florida without any judicial intervention."[1]

> *Id.*, p. 3, n. 4.

---

[1] Seklecki reported that his son needed further medical appointments and would not take the February 23 flight on Southwest as originally intended.

Plaintiff's Current Motion for Sanctions: ECF No. 87

    Perhaps realizing that, as Attorney Goldberg has said, there was no basis for a "Contempt" (*see,* Ex. C, Goldberg Email) request to this Court based on events in Miami, Seklecki turned his wrath in another direction: American's attorneys.   Instead of seeking contempt orders against people never before the Court, he now seeks "sanctions" against counsel based upon statements in the Opposition Brief to his request for a Preliminary Injunction, even though every word in that brief was accurate.

    Seklecki's eight-page sanctions motion (ECF No. 87) avoided the central point of the Airline Defendants' preliminary injunction opposition (ECF No. 68) relating to the February 22-24 trip: that this Court need not rule on a request for an injunction for a flight in the past, and that the parties in fact had reached agreement on how the Seklecki and MS, Jr. could fly mask free. Plaintiff also conveniently ignored the fact that counsel for the Airline Defendants had plainly disclosed that he and his son had missed the American outbound flight because of something that happened at the Miami ticket counter, and that that episode was then the subject of an ongoing investigation.

    More troubling, Seklecki failed to disclose that he had not tried to check in at the ticket counter until 11 minutes *after* Flight #1526 was scheduled to depart.  Instead, Plaintiff falsely claims that American Airlines Customer Service Representative ("CSR") with whom Plaintiff dealt with at the Miami International Airport check-in counter, Mr. Simon-Narcisse, refused to board them or look at the Mask Exemption letter or the COVID-19 test when the PNR shows that she actually booked them on a direct flight from Miami to Boston that left at 7:58 PM and they refused to take it because a change fee would apply.  ECF No. 99, Simon-Narcisse Declaration ¶¶ 18-21; Ex. A., Spence Declaration, ¶¶ 13-15, 21-37.

Seklecki has entirely misrepresented what happened at the Miami ticket counter. Seklecki did not miss Flight #1526 because of confusion over the Mask-Exemption letter or a negative COVID test dispute. Instead, by the time he appeared before the American agent at the ticket counter, it was too late to make the 5:20 PM flight from Miami to Washington-Reagan National Airport, on the way to Manchester-Boston Regional Airport. Seklecki simply missed the flight. He then tried to get a direct flight to Boston for free and attempted to coerce the CSR into waiving the applicable change fee.

The obligation to be forthcoming and truthful with the Court applies to everyone who signs a pleading, both counsel and *pro se* litigants. Fed. R. Civ. P. 11(b). American and its counsel take that obligation very seriously. In their Opposition Brief to the Preliminary Injunction Motion (ECF No. 68), American's counsel set forth in full, complete and accurate detail the facts and applicable law establishing that Seklecki's pending Motion for Preliminary Injunction should be denied. Of necessity, this included demonstrating to the Court why Seklecki's request for an equitable order from this Court relating to a trip scheduled for a week before the Opposition Brief was filed, had been rendered moot. Every word in that Opposition Brief was true, accurate and complete; and, in fact, has been sustained by both documentary and video evidence.

The same cannot be said for Plaintiff's sanctions motion now pending before this Court (ECF No. 87). Seklecki claims that a ticket agent refused to honor the letter from Attorney Soares or a negative COVID-19 test, when in fact investigation into the circumstances reveals something quite different.

As shown on Seklecki's PNR (ECF No. 99-1), the reason he and MS Jr. were not allowed to board is that they simply did not get to the ticket counter on time. ECF No. 99, Simon-Narcisse Declaration, ¶¶ 8-13, 21; Ex. A, Spence Declaration, ¶¶ 26-28. By the time they first presented to

Ms. Simon-Narcisse at 5:41 pm, the Sekleckis had missed the 5:20 PM flight and he knew it. That was why Seklecki asked to be booked on the direct flight to Boston, instead of another flight to Manchester. ECF No. 99, Simon-Narcisse Declaration, ¶¶ 8-10, 13; ECF No. 99-1, PNR, Hist. Seq. 17). Only when Ms. Simon-Narcisse told Seklecki that he would have to pay the change fee to take the Boston flight did he get upset, call someone she thought was a lawyer, and threaten her with legal action before he stormed away. ECF No. 99, Simon-Narcisse Declaration, ¶¶ 15-17, 19.

Seklecki claims that Ms. Simon-Narcisse refused to call her supervisor, but, here, again, the PNR disproves his story. The PNR notes also reflect that Ms. Simon-Narcisse offered to involve the Complaint Resolution Officer, but Seklecki and his family would not wait for the CRO to appear. *Id.* at ¶ 23; ECF No. 99-1, PNR, Hist. Seq. 17.

Nothing in this sequence contradicts the Airline Defendants' Opposition to Seklecki's Motion for Preliminary Injunction (ECF No. 68) in the slightest. Rather, it demonstrates why it was necessary not to jump to conclusions before a full investigation into the Miami incident could be completed. Contrary to Seklecki's assertion that Counsel did not conduct an investigation into the facts before filing its Opposition, when they filed the Opposition Brief on March 1, American's lawyers were in the process of doing just that. In the Opposition Brief, Counsel stated plainly that they were doing so. As it turns out, the investigation revealed an event far different than the one alleged by the Plaintiff. The investigation revealed exactly what happened and how untruthful the Plaintiff has been with this Court.

The Advisory Committee Notes to Rule 11 of the Federal Rules of Civil Procedure warn: "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." When necessary and appropriate, courts have not hesitated to resort to this

relief.   *See Storey v. Cello,* 347 F.3d 370, 393 (2d Cir.2003) (observing that filing of a frivolous Rule 11 motion "is itself subject to the requirements of the rule and can lead to sanctions"); *On Time Aviation, Inc. v. Bombardier Cap., Inc.,* 354 F. App'x 448, 451–52 (2d Cir. 2009) (Because the record reasonably supports the district court's finding that the attorney's own motion for sanctions against defendant's counsel was unsupported by the record and objectively unreasonable, the Court found no abuse of discretion in awarding sanctions arising from a frivolous motion for sanctions).   *Pro Se* parties have the same obligations to follow the rules and are subject to the same penalties when they do not.  Fed. R. Civ. P. 11 (c)(1).  The Airline Defendants trust that this pattern will not be repeated and that the case will be litigated according to the Rules and decided on the merits.

The above discussion should be more than ample for the Court to deny the Plaintiff's baseless Motion for Sanctions.  In addition, however, the fact remains that the Plaintiff failed to precede his Motions for Sanctions with a "safe-harbor" file-ready motion that he caused to be "served" on American Airlines' counsel, prior to filing the Motion for Sanctions with the Court. This is yet a further reason why the Motion for Sanctions should be denied.  See Rule 11(c)(2), Fed. R. Civ. P.  ("A motion for sanctions . . . must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriate corrected within 21 days after service or within another time the court sets").  In *Bearbones, Inc. v. Peerless Indem. Ins. Co.*, No. 3:15-30017-KAR, 2018 WL 6506073 (D. Mass. Dec. 11, 2018), the Court stated:

> To the extent Defendant relies on Fed. R. Civ. P. 11(b), Plaintiffs' counsel is correct that Defendant did not comply with the so-called safe harbor provisions in Fed. R. Civ. P. 11(c)(2) prior to filing and serving its sanctions motion. Compliance with this provision is mandatory. Sanctions should not be awarded pursuant to this provision where the sanctions motion was not served on the opposing party before it was filed with the court. *See, e.g., Starski v. Kirzhnev*, Civil Action No. 06-10157-

DPW, 2011 WL 923499, at *9 (D. Mass. Mar. 15, 2011) (stating that noncompliance with Rule 11's safe harbor provision is fatal to a Rule 11 motion).

*Id*. at *4.  In *Starski*, the court stated;

> The First Circuit has made clear that "[t]he moving party must . . .  serve the Rule 11 motion on opposing counsel at least twenty-one days prior to filing with the court so as to provide the adversary time to withdraw the challenged paper." *Lamboy–Ortiz v. Ortiz–Velez,* —— F.3d ——, 2010 WL 5129824, at *12 (1st Cir.2010) (citing Fed.R.Civ.P. 11(c)(2)). Noncompliance with this "safe harbor" provision is fatal to a Rule 11 motion. *See id.* (reversing an award of Rule 11 sanctions because the moving party failed to comply with this necessary prerequisite); *see also* Fed.R.Civ.P. 11(c)(2) ("The motion . . . *must not be filed or be presented to the court* if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service or within 21 days after service  . . . . " (emphasis added)).  Starski did not comply with the safe harbor provision, and, insofar as his motion for sanctions was pursuant to Rule 11, I must deny it.

2011 WL 923499, at *9.

<u>CONCLUSION</u>

For these reasons, the Airline Defendants request (1) that Plaintiff's Motion for Sanctions (Doc. 87) be denied; (2) that Plaintiff either withdraw his Motion, or that it be stricken from the docket; and (3) that the Court admonish Mr. Seklecki that similar filings in the future may result in the award of monetary sanctions or other appropriate relief against him.

Respectfully Submitted,

AMERICAN AIRLINES, INC. and
SOUTHWEST AIRLINES CO.,
By their Counsel,

/s/ Christopher A. Duggan
Christopher A. Duggan (BBO No. 544150)
SMITH DUGGAN BUELL & RUFO LLP
55 Old Bedford Road
Lincoln, MA 01773
(617) 228-4400
Chris.Duggan@SmithDuggan.com

M. Roy Goldberg
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
(202) 728-3005
roy.goldberg@stinson.com
*Admitted Pro Hac Vice*

Dated: March 24, 2022

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 24th day of March 2022, I caused a true and correct copy of the as-filed version of this filing to be served on all counsel of record via the CM/ECF system. Although Plaintiff is proceeding pro se, he has been authorized by the Court to use the CM/ECF system. ECF No. 21. Accordingly, Plaintiff will receive service of this filing through the CM/ECF system.

<u>/s/ Christopher A. Duggan</u>
Christopher A. Duggan (BBO No. 544150)